BROWN PLUMBING & HEATING, INC v HOMEOWNER
CONSTRUCTION LIEN RECOVERY FUND

Docket No. 127345. Submitted May 14, 1991, at Grand Rapids. De-
cided August 20, 1991, at 9:00 A.M. Leave to appeal sought.

Brown Plumbing & Heating, Inc., brought an action in the
Montcalm Circuit Court against the Homeowner Construction
Lien Recovery Fund of the Department of Licensing and Regu-
lation and others, seeking recovery from the fund of an amount
for which it, as a subcontractor, had filed a construction lien
against a newly constructed residential property after receiving
no payment from the general contractor. The fund moved for
summary disposition on the basis that the plaintiff was pre-
cluded under the Construction Lien Act from recovering from
the fund because the plaintiff's general contractor was unli-
censed, MCL 570.1203(3)(h); MSA 26.316(203)(3)(h). The court,
James L. Banks, J., granted summary disposition for the plain-
tiff, ruling that its reliance on a representation by the general
contractor that it was a licensed contractor constituted substan-
tial compliance with § 203(3)(h). The fund appealed.

The Court of Appeals *held*:

The object and purpose of the Construction Lien Act is to
protect and enforce by lien the rights of those who perform
labor or provide materials for the improvement of real prop-
erty. MCL 570.1302(1); MSA 26.316(302)(1) is remedial and is to
be liberally construed to secure its beneficial results, intents,
and purposes. Substantial compliance with the provisions of the
act is sufficient to make a construction lien valid and enforce-
able in court. The trial court in this case did not err in
determining that the plaintiff had substantially complied with
§ 203(3)(h).

Affirmed.

REFERENCES

Am Jur 2d, Building and Construction Contracts § 130; Mechanics'
Liens §§ 49, 332.

Failure of building and construction artisan or contractor to pro-
cure business or occupational license as affecting enforceability of
contract or right of recovery for work done—modern cases. 44
ALR4th 271.

MECHANICS' LIENS — CONSTRUCTION LIEN ACT — HOMEOWNER CONSTRUCTION LIEN RECOVERY FUND.

A subcontractor that seeks a recovery on a recorded construction lien from the Homeowner Construction Lien Recovery Fund substantially complies with the requirement of the Construction Lien Act that the general contractor with whom it contracted be licensed where it relies on a representation by the general contractor that it is licensed (MCL 570.1203[3][h]; MSA 26.316[203][3][h]).

*Richard D. Palmer,* for the plaintiff.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Robert N. Swartz,* Special Assistant Attorney General, for the defendant.

Before: HOOD, P.J., and MCDONALD and FITZGERALD, JJ.

PER CURIAM. Defendant-appellant Homeowner Construction Lien Recovery Fund appeals as of right from a March 12, 1990, judgment granting a motion by plaintiff Brown Plumbing & Heating, Inc., for summary disposition pursuant to MCR 2.116(C)(9) and (10) and denying the fund's motion for summary disposition pursuant to MCR 2.116(C) (8). We affirm.

This is a construction lien case in which plaintiff, the plumbing subcontractor, sued the residential property owners, the Wyckoffs; the general contractor, Primus Energy Homes, also known as Mayflower Construction Company; the mortgage lender, Old Kent Bank; another construction lien holder, Erb Lumber Company; and the fund, pursuant to the Construction Lien Act, MCL 570.1101 *et seq.*; MSA 26.316(101) *et seq.*, for monies owed to plaintiff for labor and materials supplied for the construction of the residential structure.

In 1986, the Wyckoffs entered into a contract

with Primus through its co-owners, E. Cruz Ortiz and Leonard Ortiz, to build a residence. The Wyckoffs stated in their answers to plaintiff's interrogatories that E. Cruz Ortiz represented to them that he had a builder's license.

During construction of the Wyckoff residence, Leonard Ortiz filed a sworn statement with Old Kent Bank representing that the general contractor's name was not Primus, but "Mayflower Construction." Meanwhile, the Ortizes were constructing other residences, describing themselves as "Primus Energy Homes in association with Mayflower Construction, Builder's License #43237."

Plaintiff, a duly licensed plumbing and heating contractor, contracted with Primus to provide plumbing, labor, and materials as a subcontractor for the residential structure to be built for the Wyckoffs. Primus informed plaintiff that it was licensed as required by law, utilizing license #21-01-043237. The license was valid, but it was later discovered to belong to the Mayflower Construction Company.

Following construction of the house, the Wyckoffs paid Primus, but Primus did *not* pay plaintiff for its work. Primus is no longer in business and is uncollectible, and criminal charges of contracting with intent to defraud were filed against E. Cruz Ortiz in March 1988 in Newaygo County concerning other residences built by Primus.

Plaintiff filed a construction lien to recover the monies owed to it. For purposes of the instant appeal, plaintiff sought from the fund monies owed for its work. The remaining parties, other than Primus, satisfied any debts owing and were dismissed by stipulation and order of partial dismissal.

The fund filed a motion for summary disposition, MCR 2.116(C)(8). Plaintiff responded with its own

motion for summary disposition, pursuant to MCR 2.116(C)(9) and (10). The fund's primary contention was that plaintiff had failed to meet the requirements of the Construction Lien Act because neither Primus nor either of the Ortizes was a licensed residential contractor in Michigan. Section 203(3) of the act provides that a person "who seeks recovery from the fund shall establish all" of several requirements, including that set forth in provision h, that the contractor "with whom the person claiming the construction lien contracted with, is licensed if required by law to be licensed." MCL 570.1203(3)(h); MSA 26.316(203)(3)(h). The Occupational Code, MCL 339.101 *et seq.*; MSA 18.425(101) *et seq.*, regulating the licensure of various skilled occupations, requires that residential builders be licensed in order to perform services. See MCL 339.601(1); MSA 18.425(601)(1), MCL 339.2401(a); MSA 18.425(2401)(a). Conversely, plaintiff argued that it substantially complied with the "licensed contractor" requirement, see MCL 570.1203(3)(h); MSA 26.316(203)(3)(h), MCL 570.1302(1); MSA 26.316(302)(1), and was entitled to recovery.

A hearing on the parties' motions was held, during which it was not disputed that Primus and the Ortizes were unlicensed, that plaintiff never made inquiries concerning whether Primus was in fact licensed, and that plaintiff did not rely on the name "Mayflower Construction" but believed that Primus was licensed because Primus provided plaintiff with a license number. Questioning whether the Construction Lien Act requires a subcontractor to investigate the validity of a license number proffered by a contractor who represents it as his own, the court framed the issue of the case as whether there is substantial compliance with the act if the subcontractor "simply

relies on a representation by a general contractor that he was licensed and is given a license number which in fact may be bogus for all the subcontractor knows at this point."

The court ultimately ruled that plaintiff "substantially complied" with the act's requirements, denied the fund's motion for summary disposition, and granted plaintiff's motion under MCR 2.116(C) (9) and (10).

On appeal, the fund does not dispute plaintiff's "substantial compliance" with the act's licensed contractor requirement. Instead, the fund asserts the requirement should be strictly construed so that plaintiff's substantial compliance does not satisfy § 206 of the act. We disagree.

The Construction Lien Act has been construed to serve a dual purpose: (1) to protect the lien claimant's rights to payment for wages or materials and (2) to protect owners from paying twice for the same work. *Fischer-Flack, Inc v Churchfield,* 180 Mich App 606; 447 NW2d 813 (1989); also see the object clause of the act ("an act to establish, protect and enforce by lien, the rights of persons performing labor or providing material or equipment for the improvement of real property").

Section 302(1) of the Construction Lien Act provides:

> This act is declared to be a remedial statute, and *shall* be liberally construed to secure the beneficial results, intents, and purposes of this act. *Substantial compliance* with the provisions of this act *shall be sufficient* for the validity of the construction liens provided for in this act, and to give jurisdiction to the court to enforce them. [MCL 570.1302(1); MSA 26.316(302)(1). Emphasis added.]

Section 302(1) clearly states that the statute shall be liberally construed to secure the beneficial

results and purposes intended, i.e., to protect the lien claimant's right to payment for wages and materials. *Fischer-Flack, supra* at 611.

Considering that the object and purpose of the Construction Lien Act is to protect and enforce by lien the rights of those who perform labor or provide materials for the improvement of real property, *id.* at 611, we believe the trial court properly deemed plaintiff's reliance upon the contractor's license number provided by Primus tantamount to "substantial compliance" with the licensed contractor requirement of § 203(3)(h). We find support for this position not only in light of the purpose and object of the act, but also because the statute is a remedial one and should receive a liberal interpretation in favor of the lien claimant. See *Spartan Asphalt Paving Co v Grand Ledge Mobile Home Park,* 400 Mich 184; 253 NW2d 646 (1977); *Fischer-Flack, supra at 611; Norcross Co v Turner-Fisher Associates,* 165 Mich App 170; 418 NW2d 418 (1987).

The proper construction of the act being the only relevant disputed issue, we find summary disposition was properly granted pursuant to MCR 2.116(C)(10).

Affirmed.