GILROY v GENERAL MOTORS CORPORATION (AFTER REMAND)

Docket No. 87804. Argued April 3, 1991 (Calendar No. 4). Decided
September 4, 1991.

Luella Gilroy was paid disability benefits by her employer, General Motors Corporation, under a collectively bargained benefit plan, as a result of injuries received during an altercation with a fellow employee. She also sought and was paid, following a settlement with GM, workers' compensation from the date of her injury, reduced in accordance with the coördination of benefits provisions of the workers' compensation act, MCL 418.354; MSA 17.237(354), by the after-tax value of the disability benefits already received. However, the hearing referee ordered GM to pay the plaintiff's attorney fees in an amount equal to thirty percent of the benefits already paid. The Workers' Compensation Appeal Board affirmed. The Court of Appeals, WAHLS, P.J., and GILLIS and C. W. SIMON, JJ., affirmed in an opinion per curiam (Docket No. 88424). The Supreme Court initially denied leave to appeal. 430 Mich 872 (1988). On reconsideration, the case was remanded to the Court of Appeals for remand to the Bureau of Workers' Disability Compensation for proceedings to determine the contractual relationship between GM and its disability trust administrator, Metropolitan Life Insurance Company, and, thereafter, for reconsideration of its opinion. 431 Mich 855 (1988). On remand, the Court of Appeals, WAHLS, P.J., and GILLIS and McDONALD, JJ., again affirmed in an opinion per curiam (Docket No. 110651). GM appeals.

In an opinion by Justice GRIFFIN, joined by Chief Justice CAVANAGH and Justices LEVIN, BRICKLEY, RILEY, and MALLETT, the Supreme Court held:

The workers' compensation act imposes no liability on the employer to pay the attorney fees in question.

1. A sickness and accident policy, such as that provided by GM, is a fringe benefit intended to supplement, rather than duplicate, workers' compensation. Typically, it does not cover

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 437, 644.
See the Index to Annotations under Workers' Compensation.

work-related disability. To encourage interim payments by disability insurers to disabled employees during pursuit of workers' compensation claims, insurers are permitted, under MCL 418.821(2); MSA 17.237(821)(2), to take assignments from the worker-claimants entitling them to reimbursement for payments made when and if workers' compensation is awarded. Where an insurer enforces such an assignment, it must pay a portion of the attorney fees of the attorney who secured the workers' compensation recovery.

2. In this case, neither GM nor Metropolitan Life enforced an assignment or received reimbursement from the plaintiff's workers' compensation award. The language of § 821(2) is clear, precisely limiting its application only where there is enforcement of an assignment. Rather then enforcing an assignment under § 821(2), GM reduced its workers' compensation liability by coördinating the disability benefits previously paid to the plaintiff under § 354. It cannot be said that in securing workers' compensation for the plaintiff a benefit was conferred by the plaintiff's attorney either on GM or Metropolitan Life.

3. Although § 354(1)(b) provides that attorney fees must be paid to the attorney who secured workers' compensation recovery, the provision is conditioned on the enforcement of an assignment under § 821.

Justice BOYLE, concurring, stated that §§ 354 and 821 are ambiguous. However, because the employer did not benefit by virtue of the efforts of the plaintiff's attorney, the result is warranted.

Reversed.

181 Mich App 178; 448 NW2d 777 (1989) reversed.

1. WORKERS' COMPENSATION — SICKNESS AND ACCIDENT BENEFITS — COÖRDINATION OF BENEFITS — ATTORNEY FEES.

An employer who chooses to coördinate workers' compensation and sickness and accident benefits paid to an injured employee is not liable to pay the fees of an attorney who secures workers' compensation for the employee (MCL 418.354, 418.821[2]; MSA 17.237[354], 17.237[821][2]).

2. WORKERS' COMPENSATION — SICKNESS AND ACCIDENT BENEFITS — ASSIGNMENT OF BENEFITS — ATTORNEY FEES.

An insurer who enforces an assignment of workers' compensation benefits to obtain reimbursement of sickness and accident benefits paid to an injured employee of its insured while the employee pursued a workers' compensation claim must pay a portion of the fees of the attorney who secures the workers'

compensation recovery (MCL 418.354, 418.821[2]; MSA 17.237[354], 17.237[821][2]).

*James A. Tanielian (Daryl Royal and Mac-Donald, Fitzgerald, MacDonald & Simon, P.C., by R. Duncan MacDonald,* of counsel) for the plaintiff.

*Bodman, Longley & Dahling (by Theodore Souris, James A. Smith,* and *Vincent J. Tatone); (John G. Rahie,* of counsel) for the defendant.

Amicus Curiae:

*Conklin, Benham, Ducey, Listman & Chuhran, P.C. (by Martin L. Critchell),* for Michigan Self-Insurers' Association.

GRIFFIN, J. This lawsuit, which arose out of a claim for workers' compensation, is about the award of an attorney's fee and whether it was authorized. The issue presented is one of statutory construction. Because under the circumstances in this case the Workers' Disability Compensation Act[1] imposes no liability upon the employer for the attorney fee in question, we reverse the decision of the Court of Appeals.

I

Plaintiff Luella Gilroy was injured in an altercation with a fellow employee on May 27, 1982, while employed by defendant General Motors Corporation.[2] Under a collectively bargained disability

---

[1] MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.*

[2] As amicus curiae has pointed out, events in this case are governed by provisions of the Workers' Disability Compensation Act that were in effect between March 31, 1982, and July 30, 1985.

benefit plan,[3] plaintiff first received sickness and accident benefits of $996.66 per month for a year, and then she received extended disability benefits of $830 per month. Under the plan, benefits were not payable for periods of disability compensable under the WDCA.[4]

In order to fund this plan, GM established two trusts which were administered by Metropolitan Life Insurance Company. Under the arrangement, if the total amount of claims paid in a particular month should exceed the amount which GM was required to provide, the excess was to be paid by Metropolitan Life. Accordingly, GM was self-insured up to a trigger point, and it was insured by Metropolitan Life with regard to excess liability, if any. Because the aggregate of claims did not exceed the trigger point during the period here in question, it is undisputed that all of the disability benefits disbursed during that period were paid out of GM's funds.

While receiving disability benefits under the plan, plaintiff also filed a claim under the Workers' Disability Compensation Act. After initially contesting the claim, GM, in a settlement agree-

---

[3] The benefit plan was part of a collective bargaining agreement between GM and the United Auto Workers, of which plaintiff was a member.

[4] The plan provided in part:

> Benefits payable for any period shall be reduced by any payments for time lost from work in that period to which the employe is entitled under any Workers Compensation Law . . . .

The plan also provided:

> If it is determined that any benefit(s) paid to an employe under this Article should not have been paid or should have been paid in a lesser amount, written notice thereof shall be given to such employe and he shall repay the amount of the overpayment to the insurance company.

ment dated June 22, 1983, conceded plaintiff's entitlement to workers' compensation at the rate of $238.49 per week from the date of her injury. The agreement also recognized that under coördination provisions in § 354[5] of the act, the total amount of workers' compensation otherwise due plaintiff for the period between the date of her injury and the agreement date would be reduced by the after-tax value of the disability benefits already received by plaintiff under the plan.[6]

In view of the settlement, plaintiff's claim for workers' compensation was dismissed; however, the referee's dismissal order included a requirement that GM pay to plaintiff's attorney a fee equal to thirty percent of the disability benefits already paid to plaintiff under the collectively bargained disability plan.

Protesting that the benefits received by plaintiff under the plan had been paid voluntarily without intervention of plaintiff's attorney, and arguing that no statutory authority existed for the order

---

[5] § 354 provides in part:

   (1) Except as otherwise provided in this section, the employer's obligation to pay or cause to be paid weekly benefits . . . shall be reduced by these amounts:

                    *  *  *

   (b) The after-tax amount of the payments received or being received under a self-insurance plan . . . or under a disability insurance policy provided by the same employer . . . . If such self-insurance plans . . . or disability insurance policies are entitled to repayment in the event of a worker's compensation benefit recovery, the carrier shall satisfy such repayment out of funds the carrier has received through the coordination of benefits provided for under this section. [MCL 418.354; MSA 17.237(354).]

[6] According to plaintiff, the after-tax value of the $230.00 per week sickness and accident benefit received for one year by plaintiff was $190.13 per week, as calculated by the Bureau of Workers' Disability Compensation. The after-tax value of the $830.00 per month extended disability benefit received by plaintiff after the first year to June 22, 1983, amounted to $161.91 per week.

requiring payment of such a fee to plaintiff's attorney, GM appealed.[7] However, the order was affirmed, first by the Workers' Compensation Appeal Board, and later by the Court of Appeals.[8] 166 Mich App 609; 420 NW2d 829 (1987).

Initially, this Court denied leave to appeal. 430 Mich 872 (1988). However, we reconsidered and remanded to the Court of Appeals with directions for that Court to consider its decision again, after remanding to the Bureau of Workers' Disability Compensation for a hearing to obtain additional information concerning the contractual relationship between GM and Metropolitan Life. 431 Mich 855 (1988). Following the hearing, the Court of Appeals again affirmed. 181 Mich App 178; 448 NW2d 777 (1989).

---

[7] GM also argued that its self-funded employee benefit plan is governed by the Employee Retirement Income Security Act of 1974, 29 USC 1101 *et seq.*, and that application of WDCA, insofar as it related to attorney fees, is precluded by § 514, the preëmption provision of ERISA, 29 USC 1144(a). Because we reverse on other grounds, we do not reach this issue.

[8] The board and the panel relied upon § 354 and § 821 of the WDCA. Section 354(1)(b) provides in part:

> If such self-insurance plans . . ., or disability insurance policies are entitled to repayment in the event of a worker's compensation benefit recovery, the carrier shall satisfy such repayment out of funds the carrier has received through the coordination of benefits provided for under this section. Notwithstanding the provisions of this subsection, attorney fees shall be paid pursuant to section 821 to the attorney who secured the worker's compensation recovery. [MCL 418.354(1)(b); MSA 17.237(354)(1)(b).]

Section 821(2) provides in part:

> When a group disability or hospitalization insurance company . . . or any successor organization enforces an assignment given to it as provided in this section, it shall pay, pursuant to rules established by the director, a portion of the attorney fees of the attorney who secured the worker's compensation recovery. [MCL 418.821(2); MSA 17.237(821)(2).]

Section 821(3) provides in part: "As used in this section, 'insurance company' includes a self-insurer."

We then granted leave to appeal. 436 Mich 880 (1990).

.

## II

As the Legislature has recognized, it is not uncommon for employers to purchase group insurance which provides regular payments to employees who become disabled because of a sickness or injury that is not covered by workers' compensation. We have explained that a sickness and accident policy,

> commonly known in the insurance field as an "s & A," is an employer-provided fringe benefit meant to supplement, rather than duplicate, the state-mandated workers' compensation protection. It covers non-work-related illnesses [and injuries] and, in effect, helps fill the gap in the worker's disability insurance coverage. [Aetna Life Ins Co v Roose, 413 Mich 85, 93, n 5; 318 NW2d 468 (1982).]

Although the typical s & A policy does not cover work-related disability, legislation has been put in place to encourage interim payments by the s & A insurer while a disabled employee who may be entitled to workers' compensation pursues a claim. By taking an assignment from the employee-claimant, the insurer becomes entitled to reimbursement for payments made when and if workers' compensation is awarded.

Ordinarily, an employee's entitlement to workers' compensation benefits is not assignable. MCL 418.821(1); MSA 17.237(821)(1). However, to encourage interim payments by disability insurers in the circumstances described, the Legislature has provided that the rule against assignment

> shall not apply to or affect the validity of an

assignment made to an insurance company
. . . making an advance or payment to an em-
ployee under a group disability or group hospitali-
zation insurance policy which provides that bene-
fits shall not be payable under the policy for a
period of disability or hospitalization resulting
from accidental bodily injury or sickness arising
out of or in the course of employment. [MCL
418.821(2); MSA 17.237(821)(2).]

In *Aetna Life Ins Co v Roose, supra,* pp 93-94,
our Court explained:

> The purpose of § 821(2) is to allow and encour-
> age insurance companies carrying sickness and
> accident policies to step forward and pay immedi-
> ate benefits to injured workers who are pursuing a
> claim for workers' compensation. In this manner,
> the worker, often unable to work and incurring
> medical expenses, will be better able to weather
> the storm while waiting for a determination by the
> bureau.

The focal point of this lawsuit is the final sen-
tence of § 821(2) which provides:

> When a group disability or hospitalization insur-
> ance company . . . *enforces an assignment* given
> to it as provided in this section, *it shall pay,*
> pursuant to rules established by the director, *a
> portion of the attorney fees of the attorney who
> secured the worker's compensation recovery.* [Em-
> phasis added.]

Reference to this language is also incorporated
in § 354 which provides for coördination of work-
ers' compensation with certain other employer-
funded benefits. Chief Justice CAVANAGH recently
explained that § 354

> was part of a legislative reform package involving

a series of related amendments of the workers'
compensation statute. The coördination provisions
were an essential component of a compromise plan
that restructured benefits payable to disabled
workers. The resources saved as a result of this
coördination were reallocated by the statute to
increase benefit levels generally . . . . [*Romein v
General Motors Corp*, 436 Mich 515, 521; 462
NW2d 555 (1990).]

In pertinent part, § 354 provides:

(1) Except as otherwise provided in this section,
the employer's obligation to pay or cause to be
paid weekly benefits other than specific loss bene-
fits under section 361(2) and (3) shall be reduced by
these amounts:

\* \* \*

(b) The after-tax amount of the payments re-
ceived or being received under a self-insurance
plan, a wage continuation plan, or under a disabil-
ity insurance policy provided by the same em-
ployer from whom benefits under section 351, 361,
or 835 are received if the employee did not contrib-
ute directly to the plan or to the payment of
premiums regarding the disability insurance pol-
icy. If such self-insurance plans, wage continuation
plans, or disability insurance policies are entitled
to repayment in the event of a worker's compensa-
tion benefit recovery, the carrier shall satisfy such
repayment out of funds the carrier has received
through the coordination of benefits provided for
under this section. Notwithstanding the provisions
of this subsection, *attorney fees shall be paid
pursuant to section 821 to the attorney who se-
cured the worker's compensation recovery.* [MCL
418.354(1)(b); MSA 17.237(354)(1)(b). Emphasis
added.]

In reaching its decision in this case, the WCAB
acknowledged that neither GM nor Metropolitan

Life had enforced an assignment or received any reimbursement out of plaintiff's workers' compensation award. Declaring, nevertheless, that plaintiff's compensation benefits had been reduced through coördination "in the same manner" as though she had signed a reimbursement agreement, the panel "inferred that the employer . . . stands in the place of the S & A carrier under Section 821, thus becoming responsible for the attorney fee based on the S & A benefits representing the balance of workers' compensation."

In its first review of this case, the Court of Appeals reasoned that Metropolitan Life could not "be characterized as an insurer independent of defendant since no truly independent insurance company would intentionally fail to take an assignment from a worker for reimbursement of sickness and accident payments in the event of the worker's entitlement to workers' compensation benefits." 166 Mich App 615. The panel concluded that defendant GM "stands in the place of the disability insurance carrier [Metropolitan Life]," and for that reason, "under § 821, is required to pay a portion of plaintiff's attorney fees . . . ." 166 Mich App 614, 616.

Upon remand, and after a hearing at which the relationship between GM and Metropolitan Life was explored, the Court of Appeals applied similar reasoning and reached the same result. It opined that "[t]o disallow the payment of a portion of such fees, particularly in a case such as this in which the employer reaped the substantial benefit of a coördination credit for the disability benefits paid to plaintiff, would be unjust." 181 Mich App 184.

Against that background, we turn now to consider the applicability in this case of the § 821 attorney-fee provision.

### III

As in any other civil litigation, a workers' compensation claimant is ordinarily responsible for personal attorney fees. 3 Larson, Workmen's Compensation Law, § 83.11, pp 15-1270. Generally, attorney fees are paid out of the workers' compensation awarded. Of course, the established weekly benefit rate for a claimant represented by an attorney is the same as for one not so represented. Section 858(2)[9] of the act provides, in part, that "[t]he director, by rule, may prescribe maximum attorney fees and the manner in which the amount may be determined or paid *by the employee* . . . ." MCL 418.858(2); MSA 17.237(858)(2). (Emphasis added.)

Clearly, if this plaintiff had filed for and recovered workers' compensation without receiving disability benefits under the GM plan, or if there had been no such plan in effect, she would have been responsible for the fees charged by her attorney in connection with the workers' compensation claim.[10]

Section 821(2) provides only a narrow exception to this general rule. It provides that when a

group  disability  or  hospitalization  insurance

---

[9] This section has been construed as governing attorney fee disputes between attorneys and their clients and not disputes over attorney fees between the parties. See *McDougall v General Motors Corp,* 185 Mich App 509; 463 NW2d 151 (1990); *Gross v A & P Co,* 87 Mich App 448; 274 NW2d 817 (1978).

[10] MCL 418.858; MSA 17.237(858). See also 1980 AACS, R 408.44(2), which provides:

In a case tried to completion with proofs closed or compensation voluntarily paid, an attorney, before computing the fee, shall deduct from the accrued compensation the reasonable expenses incurred on plaintiff's behalf. The fee that the administrative law judge may approve shall not be more than 30% of the balance.

company . . . *enforces an assignment* given to it as provided in this section, it shall pay, pursuant to rules established by the director, a portion of the attorney fees of the attorney who secured the worker's compensation recovery. [MCL 418.821(2); MSA 17.237(821)(2). Emphasis added.]

We are, of course, guided in our interpretation of § 821 by certain fundamental rules of construction. Where the provisions of a statute are clear and unambiguous, they are to be applied as written without construction. *Selk v Detroit Plastic Products,* 419 Mich 1, 9; 354 NW2d 184 (1984). The language of the exception set forth in § 821(2) is clear and precisely limits its application. Finding that this provision looks to the realization of reimbursement, we conclude that it requires payment of a portion of the claimant's attorney fees only where there is enforcement of an assignment.

GM argues that neither it nor Metropolitan Life is a "disability or hospitalization insurance company" within the meaning of § 821(2). We need not address that contention. Even assuming arguendo that GM "stands in the place of the disability insurance carrier," 166 Mich App 614—as characterized by the panel below—it is undisputed that neither GM, nor its agent, Metropolitan Life, enforced an assignment.

Rather than enforcing an assignment, as contemplated by § 821(2), GM acted pursuant to § 354, which allowed it to reduce its workers' compensation liability by coördinating sickness and accident and extended disability benefits previously paid to plaintiff. The distinction between coördination under § 354 and enforcement of an assignment under § 821(2) is not without an important difference. Under § 354(1)(b), after an employee recovers a workers' compensation award, the employer may adjust or credit its liability for workers' compensa-

tion only by the *after-tax* amount of the group benefits previously paid.[11] However, under § 821(2), an insurer enforcing an assignment is entitled to reimbursement for the *entire* pretax amount of group benefits paid but less "a portion of the attorney fees of the attorney who secured the worker's compensation recovery."

We are convinced that our construction of the attorney-fee provision is consistent with the policy which underlies it. In addition to encouraging disability insurers to make advance interim payments to disabled employees, § 821 allows a claimant's attorney to collect part of his fee from the insurer where, through reimbursement, it has benefited from the attorney's successful prosecution of the workers' compensation claim. To require the reimbursed insurer to pay a proportionate share of the attorney fee under those circumstances is fair and avoids giving the insurer a "free ride."

However, in the situation presented by this case, it cannot be said that a benefit was conferred by claimant's attorney on either GM or Metropolitan Life. Neither of them enforced an assignment or received any reimbursement.

Contrary to the panel's view that GM reaped a "substantial benefit" by coördinating the "disability benefits paid to plaintiff," 181 Mich App 184, it is apparent that the only benefit received by GM was the right not to pay twice for the same disabil-

---

[11] The employer's workers' compensation liability shall be reduced by

> [t]he after-tax amount of the payments received or being received under a self-insurance plan, a wage continuation plan, or under a disability insurance policy provided by the same employer from whom benefits under section 351, 361, or 835 are received if the employee did not contribute directly to the plan or to the payment of premiums regarding the disability insurance policy. [MCL 418.354(1)(b); MSA 17.237(354)(1)(b).]

ity. That "right" is provided by law in § 354 and was recognized in the bargained benefit plan agreed to by the United Auto Workers Union on plaintiff's behalf.

Plaintiff also argues that § 354 independently requires payment by GM of the attorney fee in question. We turn now to consider that contention.

IV

In pertinent part, § 354(1)(b) provides:

> If such self-insurance plans, wage continuation plans, or disability insurance policies are *entitled to repayment* in the event of a worker's compensation benefit recovery, the carrier shall satisfy such repayment out of funds the carrier has received through the coordination of benefits provided for under this section. *Notwithstanding the provisions of this subsection, attorney fees shall be paid pursuant to section 821 to the attorney who secured the worker's compensation recovery.* [MCL 418.354(1)(b); MSA 17.237(354)(1)(b). Emphasis added.]

Although it is undisputed that neither GM nor Metropolitan Life enforced an assignment, plaintiff contends that § 354 requires payment of part of a claimant's attorney fees by a self-insured or disability insurer if it is merely "entitled to repayment" in the event of a workers' compensation benefit recovery. However, this argument ignores the words of § 354 which require that such fees "be paid *pursuant to section 821.*"

We hold that the attorney fee requirement is not triggered solely by "entitle[ment] to repayment"; rather, it is also conditioned, "pursuant to section 821," upon enforcement of an assignment.

Recognizing that this is a strict construction of

the exception to the general rule that workers'
compensation claimants pay their own attorney
fees, we believe it accords with the purpose and
legislative history underlying § 354. As already
noted, that section was designed to increase work-
ers' compensation benefit levels generally by re-
allocating costs saved through coördination. The
Legislature believed it was imperative that the
increasing workers' compensation burden on Mich-
igan employers be lightened.[12] Accordingly, the
package of bills which included § 354 sought to cut
the high cost of workers' compensation by regulat-
ing and limiting medical expenses[13] and attorney
fees,[14] tightening the definitions of disabilities[15] and
compensable injuries,[16] and coördinating workers'
compensation benefits with social security and
other collateral benefits.[17]

It is noteworthy that while the WDCA allows the
bureau's director to set maximum attorney fees for
hearings of workers' compensation disputes,[18] 1981
PA 196, enacted as part of the 1981 reform pack-
age, directed that if the director based maximum
attorney fees on a weekly benefit rate, the rate
used could not, after coördination of benefits, be
greater than two-thirds of the state average
weekly wage at the time of the injury. In light of

[12] See Senate Analysis Section, SB 573, First Analysis (January 7,
1982).

[13] See 1981 SB 582. See also Senate Analysis, n 12 *supra*. SB 582
was enacted into law by 1981 PA 195.

[14] See 1981 SB 583. See also Senate Analysis, n 12 *supra*. SB 583
was enacted into law by 1981 PA 196.

[15] 1981 SB 589 and 1981 SB 590. See also Senate Analysis, n 12
*supra*. SB 589 was enacted into law by 1981 PA 199, SB 590 by 1981
PA 200.

[16] 1981 SB 590. See also Senate Analysis, n 12 *supra*. SB 590 was
enacted into law by 1981 PA 200.

[17] 1981 SB 591 and 1981 SB 595. See also Senate Analysis, n 12
*supra*. SB 595 was enacted into law by 1981 PA 203. SB 591 was
enacted into law by 1981 PA 201.

[18] MCL 418.858(2); MSA 17.237(858)(2).

the increase in weekly benefits then scheduled for 1982, it appears that this amendment was aimed at preventing a "windfall for attorneys."[19]

We believe that the ruling of the board and the panel below, if left in place, would result in a windfall for plaintiff's attorney. To require GM to pay plaintiff's attorney a fee based on thirty percent of the disability payments already paid to plaintiff under the plan ignores the fact that this attorney played no part in securing those benefits for plaintiff. Furthermore, such a result would undermine the salutary purpose sought to be achieved by § 821(2)—encouraging advance payments to help workers' compensation claimants "weather the storm."

Section 354 clearly requires that attorney fees are to "be paid *pursuant to section 821.*" "It is a well settled rule of construction that the courts should not undertake to make the legislature say what it has not said." *Burdick v Harbor Springs Lumber Co,* 167 Mich 673, 681; 133 NW 822 (1911).

v

For the reasons set forth, we reverse the decision of the Court of Appeals.

CAVANAGH, C.J., and LEVIN, BRICKLEY, RILEY, and MALLETT, JJ., concurred with GRIFFIN, J.

BOYLE, J. (*concurring*). I do not agree with the majority that MCL 418.821; MSA 17.237(821) and MCL 418.354; MSA 17.237(354) are unambiguous. Nevertheless, I do agree with the result the majority reaches because the purpose underlying § 821

---

[19] See Senate Analysis, n 12 *supra.* After January 1, 1982, the maximum weekly benefit rate increased from $210 per week to $300 per week. Thus, if the director based the maximum attorney fees on a weekly benefit rate, attorney fees would have substantially increased.

is to eliminate free riders. Since this is not a situation where General Motors Corporation benefits by virtue of the efforts of plaintiff's attorney, it is not a free rider.