BROWN PLUMBING & HEATING, INC v HOMEOWNER
CONSTRUCTION LIEN RECOVERY FUND

Docket No. 92347. Argued December 8, 1992 (Calendar No. 5). Decided May 18, 1993.

Brown Heating & Plumbing, Inc., a licensed subcontractor, brought an action in the Montcalm Circuit Court against the Homeowner Construction Lien Recovery Fund and others, seeking to collect an amount owed it by E. Cruz Ortiz and Leonard Ortiz, doing business as Primus Energy Homes, its general contractor, who had misrepresented possession of a valid builder's license. The court, James L. Banks, J., granted summary disposition for the plaintiff, holding that because the plaintiff substantially complied with the licensing requirements of § 203(3)(h) of the Construction Lien Act, that a person seeking recovery from the fund establish that the contractor or subcontractor with whom the fund claimant contracted is licensed as required by law, it was entitled to recovery from the fund. The Court of Appeals, Hood, P.J., and McDonald and Fitzgerald, JJ., affirmed in an opinion per curiam, finding that because the act is remedial in nature, it should be liberally interpreted in favor of lien claimants, and that substantial compliance with § 203(3)(h) is sufficient to permit recovery from the fund (Docket No. 127345). The defendant appeals.

In an opinion by Justice Brickley, joined by Justices Levin, Boyle, Riley, and Griffin, the Supreme Court held:

Section 302 of the Construction Lien Act, which requires substantial compliance to perfect construction liens and to permit a court to acquire jurisdiction, does not apply to part 2 of the act, which enumerates the requirements to collect from the Homeowner Construction Lien Recovery Fund.

1. The act is clear and unambiguous and expressly provides in § 302 that substantial compliance applies only to the perfection of construction liens addressed in part 1 and to court jurisdiction. It in no way suggests that substantial compliance is sufficient to collect from the fund. By not referring to the fund or recovery from the fund, § 302 expressly limits its application to part 1.

2. The placement of § 302 in part 3 does not evidence a legislative intent that it apply to the entire act; rather, the

placement merely is ambiguous. The actual intent as expressed by the unambiguous language of § 302 takes precedence over its placement. Likewise, the fact that parts 1 and 3 are essentially identical to the former mechanics' lien act and part 2 was added at the time of enactment of the current act confirms that § 302 applies only to parts 1 and 3.

3. While the liberal construction language of the first sentence of § 302 applies to the entire act, it cannot and should not nullify the clear and unambiguous requirement of § 203(3)(h) that, in seeking recovery from the fund, it must be established that the contractor was licensed.

4. Because part 2 does not deal with the validity of construction liens, its provisions cannot be tested by a substantial compliance standard.

Reversed.

Justice MALLETT, joined by Chief Justice CAVANAGH, dissenting, stated that on the basis of the rules of statutory construction and the remedial nature of the Construction Lien Act, it is sufficient for a lien claimant' to substantially comply with § 203(3)(h) in order to recover from the Homeowner Construction Lien Recovery Fund.

The Construction Lien Act was intended to protect not only a lien claimant's right to payment for wages or materials, but also a land owner from multiple payments for the same services. Section 203(3)(h) provides that in order for a lien claimant to recover from the fund, the contractor must be licensed. Section 302 provides that substantial compliance with the provisions of the act is sufficient to permit recovery from the Homeowner Construction Lien Recovery Fund. The placement of § 302 in part 3 of the act was a deliberate, affirmative decision by the Legislature, evidencing its intention that § 302 be applicable throughout the act including part 2. Reading the Construction Lien Act in its entirety, it is clear that § 302 should be made applicable to the requirements for collection from the fund, including § 203(3)(h).

190 Mich App 709; 476 NW2d 657 (1991) reversed.

*Richard D. Palmer* for the plaintiff.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Michael A. Lockman,* Assistant Attorney General, for the defendant.

BRICKLEY, J. We granted leave to determine whether the "substantial compliance" provision, § 302, of the Construction Lien Act, MCL 570.1101 *et seq.*; MSA 26.316(101) *et seq.*, applies to § 203(3)(h) of the act, which requires that one who seeks recovery from the Homeowner Construction Lien Recovery Fund establish that the person with whom the claimant contracted is licensed if required to be licensed.

I

The facts of this case are not in dispute. On April 14, 1987, plaintiff Brown Plumbing and Heating, Inc., a properly licensed plumbing and heating contractor, entered a written contract with Primus Energy Homes, a general contractor in the business of building homes, to provide plumbing labor and materials on a residential construction job. Primus fraudulently informed plaintiff that it was licensed and provided a license number belonging to a licensed, but unrelated, construction company, Mayflower Construction.[1] Plaintiff never asked to see the license or an identification card.

When Primus became insolvent and failed to pay the subcontractors for the work completed, claims of lien were filed and foreclosure proceedings were begun on the property. The Homeowner Construction Lien Recovery Fund was named as a party. MCL 570.1203(4); MSA 26.316(203)(4). The homeowners filed an affidavit stating that they

[1] Cruz Ortiz, a co-owner of Primus, misrepresented to the homeowners that he had a builder's license and used the license number belonging to Mayflower Construction to obtain building permits for the job. Leonard Ortiz, the other co-owner, filed sworn statements with a bank, alleging that Mayflower was the general contractor. Additionally, Cruz and Leonard Ortiz misrepresented themselves to others as "Primus Energy Homes in association with Mayflower Construction, Builder's License # 43237 . . . ."

paid Primus for the work completed, and thereby relieved themselves of liability. MCL 570.1203(1)(a); MSA 26.316(203)(1)(a).

Plaintiff then resorted to seek payment through the Recovery Fund. MCL 570.1201 *et seq.*; MSA 26.316(201) *et seq.* The fund refused to pay plaintiff because of plaintiff's failure to show compliance with the prerequisites for recovery under the act, namely, that Primus was a licensed residential contractor as required under Michigan law.[2]

Both the plaintiff and the fund filed motions for summary disposition. The trial court granted the plaintiff's motion, holding that the plaintiff had substantially complied with the act and, therefore, was entitled to recover from the fund.

The fund appealed.[3] Noting that one of the dual purposes of the Construction Lien Act is to protect the rights of those who perform labor or provide materials for the improvement of real property, the Court of Appeals affirmed. The Court stated that because the act is remedial in nature, it

---

[2] Residential builders are required to be licensed before they may provide services. MCL 339.601(1); MSA 18.425(601)(1); MCL 339.2401(a); MSA 18.425(2401)(a).

The specific prerequisites to recover from the fund are found in § 203(3), which provides in part:

> Subject to section 204, a person who has recorded a claim of lien and who is precluded from recovering a construction lien under subsection (1) may recover from the fund the amount for which the lien is established. A person who seeks recovery from the fund shall establish all of the following:
>
> \* \* \*
>
> (h) That the contractor or the subcontractor, with whom the person claiming the construction lien contracted with, is licensed if required by law to be licensed. [MCL 570.203(3)(h); MSA 26.316(203)(3)(h).]

[3] We note the defendant did not preserve the issue whether there was substantial compliance with the requirements for reimbursement from the lien recovery fund, in spite of the fact that the general contractor was not licensed as required by § 203(3)(h). Thus, we do not address this issue.

should be liberally interpreted in favor of lien claimants. As a result, the court held that substantial compliance with § 203(3)(h) is sufficient to permit recovery from the fund. 190 Mich App 709, 714; 476 NW2d 657 (1991). We granted leave to appeal, 440 Mich 889 (1992), and we now reverse.

II

Section 302 of the act provides:

> This act is declared to be a remedial statute, and shall be liberally construed to secure the beneficial results, intents, and purposes of this act. Substantial compliance with the provisions of this act shall be sufficient *for the validity of the construction liens* provided for in this act, and to give jurisdiction to the court to enforce them. [Emphasis added.]

We find this provision to be clear and unambiguous.[4] The express language provides that substantial compliance is only applicable in two aspects: 1) the perfection of the construction liens provided for in part 1, and 2) to give the court jurisdiction. Although the first sentence of the section states that the entire act is to be construed liberally, the language of the second sentence is qualified to apply in only the two instances described above and in no way suggests that substantial compliance is sufficient to collect from the fund.

We find it persuasive that the Legislature provided express language demonstrating its intention that the substantial compliance language should apply only to part 1 of the act. Part 1 of the act

---

[4] The dissent points out that legislative intent must be derived from the actual language of a statute, and when the language is clear and unambiguous, no further interpretation is necessary. *Post* at 188. (Citing *Storey v Meijer, Inc,* 431 Mich 368, 376; 429 NW2d 169 [1988].)

establishes the procedures to acquire an enforce-
able construction lien on a particular piece of
property; in other words, part 1 establishes the
procedures to acquire a "valid construction lien."
Part 2 creates the Homeowner Construction Lien
Recovery Fund and enumerates the requirements
that must be established to collect from the fund.
Therefore, by not referring to the fund or recovery
from the fund, and only referencing "the validity
of the construction liens," the actual language of
§ 302 expressly limits its application to part 1.

The plaintiff argues that the placement of § 302
in part 3 is evidence that the Legislature intended
that § 302 apply to the entire act. It is also possi-
ble that the Legislature, with the addition of the
recovery fund and the repositioning of the sections
that made up the previous act, did not consider
the application of current § 302.[5] Where the Legis-
lature placed § 302 may have been more a matter
of utility. For example, in arranging the various
provisions of a statute, particularly, as in this case,
where former provisions become part of a greater
statutory scheme, it is reasonable to put the sub-
stance of the statute in the beginning and place
the interpretive provisions at the end.

If § 302 would have appeared in part 1, it would
be beyond the pale of argument to which part it
applies. The fact that § 302 is not found in part 1
should not defeat the unambiguous language. We
think that in this case, where it is a question of
the actual language versus where the language
appears, the actual language is paramount.

The dissent indicates that parts 1 and 3 of the
act borrow substantially from the former mechan-
ics' lien act. In fact, "[v]irtually all of the sections

[5] The recovery fund was not part of this statute's predecessor, the
former mechanics' lien act. Part 2 of the current act was a new
addition with the enactment of this statute in 1982.

of the former mechanics' lien act are now contained within parts 1 and 3 of the Construction Lien Act." *Post* at 190. Part 2 was a new creation with the enactment of this statute. The dissent quotes the original version of the current § 302 from the mechanics' lien act of 1897. *Post* at 193. The fact that that section has remained essentially the same for almost a century demonstrates that its meaning has not changed. Because parts 1 and 3 are taken from the former mechanics' lien act, it is obvious that § 302 applies to those parts. The question is whether § 302 applies to part 2, which enumerates specific criteria for recovering from the fund. We think it can be argued with equal force that if the Legislature had intended to apply § 302 to the newly created part 2, it would have amended the language that has existed for nearly one hundred years to expressly provide for its new application.[6] The fact that the Legislature did not amend the language confirms that its meaning and application have not changed, and, therefore, § 302 only applies to parts 1 and 3.

Because of our conclusion that the substantial compliance provision of § 302 does not apply to part 2, the question now becomes whether the decision by the Court of Appeals can be based on the first sentence of § 302. While we acknowledge that the liberal construction language of the first sentence applies to the entire act, we nonetheless find that liberality cannot and should not nullify a clear and unambiguous requirement.

---

[6] The dissent states:

> If the Legislature intended that § 302 only apply to the procedures for perfecting a construction lien under part 1, then it would have placed § 302 in part 1 of the act or provided language expressly limiting the application of § 302 to part 1. [*Post* at 191.]

We take notice of the actual language of § 203(3)(h):

> A person who seeks recovery from the fund *shall*
> establish *all* of the following: . . . That the con-
> tractor or the subcontractor, with whom the per-
> son claiming the construction lien contracted with,
> is licensed if required by law to be licensed. [Em-
> phasis added.]

One cannot liberally construe this provision to
provide relief to this particular plaintiff without
destroying the meaning of the statute. There is
nothing in the record to indicate that the general
contractor was licensed at any time during the
relationship between the parties. The provision
does not say that the claimant shall take steps to
determine if, or that he subjectively believe that,
the other party is licensed.[7] Therefore, we hold
that a liberal construction of § 203(3)(h) does not
save the plaintiff's claim.

### III

In conclusion, because part 2 of the act does not
deal with the validity of construction liens, its
provisions cannot be tested by a substantial com-
pliance standard. Accordingly, we reverse the deci-
sion of the Court of Appeals.

LEVIN, BOYLE, RILEY, and GRIFFIN, JJ., concurred
with BRICKLEY, J.

MALLETT, J. We dissent from the majority opin-

---

[7] Some provisions of the act do lend themselves to a liberal con-
struction, particularly where there is a question of degree. The
following sections provide an example: § 203(1)(c) (coöperating in the
defense of the fund), § 203(3)(a) (entitled to a construction lien),
§ 203(3)(e) (not colluding to obtain payment from the fund), and
§ 203(3)(g) (making a reasonable effort to obtain payment from the
contractor or subcontractor).

ion and would affirm the decision of the Court of
Appeals. The majority holds that the substantial
compliance language of § 302 applies only to the
details for perfecting a construction lien under
part 1 of the act and not to claims against the
fund under part 2. As a result, complete adherence
to the requirements set forth in § 203(3) is a condi-
tion precedent to recovery from the fund. We
disagree.

I

Enacted in 1980, the Construction Lien Act
seeks to achieve a dual protective purpose. It
aspires to protect not only a lien claimant's right
to payment for wages or materials, but also the
landowner from multiple payments for the same
services. *Fischer-Flack, Inc v Churchfield*, 180
Mich App 606; 447 NW2d 813 (1989). The pream-
ble to the act sets forth its broadly defined pur-
pose.

> AN ACT to establish, protect, and enforce by lien
> the rights of persons performing labor or providing
> material or equipment for the improvement of real
> property; to provide for certain defenses with re-
> spect thereto; to establish a homeowner construc-
> tion lien recovery fund within the department of
> licensing and regulation; to provide for the powers
> and duties of certain state officers; to provide for
> the assessments of certain occupations; to pre-
> scribe penalties; and to repeal certain acts and
> parts of acts.

Although a preamble is not to be considered au-
thority for construing an act, it is useful for inter-
preting its purpose and scope. *Malcolm v East
Detroit*, 437 Mich 132, 143; 468 NW2d 479 (1991);
2A Singer, Sutherland Statutory Construction (5th
ed), § 47.04, pp 145-150.

A

The fundamental rules of statutory construction are instructive in determining the applicability of § 302. On several occasions, this Court has held that where the provisions of a statute are clear and unambiguous, they are to be applied as written. *Gilroy v General Motors Corp (After Remand),* 438 Mich 330, 341; 475 NW2d 271 (1991); *Selk v Detroit Plastic Products,* 419 Mich 1, 9; 345 NW2d 184 (1984). When construing statutory provisions, the court's task is to discover and effectuate the intent of the Legislature. The legislative intent is to be derived from the actual language of a statute, and when the language is clear and unambiguous, no further interpretation is necessary. *Storey v Meijer, Inc,* 431 Mich 368; 429 NW2d 169 (1988). Where ambiguity exists, a court must give the statute a valid and reasonable construction that will reconcile any inconsistencies and give effect to all of its parts. *Girard v Wagenmaker,* 437 Mich 231, 238; 470 NW2d 372 (1991); *Aikens v Dep't of Conservation,* 387 Mich 495, 499; 198 NW2d 304 (1972). A court must also ascertain "the evil or mischief which it is designed to remedy, and will apply a reasonable construction which best accomplishes the statute's purpose." *Pittsfield Charter Twp v Saline,* 103 Mich App 99, 105; 302 NW2d 608 (1981). Remedial statutes are to be construed liberally in favor of the persons intended to be benefitted by the statute. *Bierbusse v Farmers Ins Group,* 84 Mich App 34, 37; 269 NW2d 297 (1978).

With these precepts of statutory construction in mind, under the Construction Lien Act, a lien claimant such as plaintiff Brown Plumbing must establish several elements before recovering from

defendant fund.[1] Among the requirements is
§ 203(3)(h),[2] which provides:

> Subject to section 204,[3] a person who has re-
> corded a claim of lien and who is precluded from
> recovering a construction lien under subsection (1)
> may recover from the fund the amount for which
> the lien is established. A person who seeks recov-
> ery from the fund shall establish all of the follow-
> ing:
>
> * * *
>
> (h) That the contractor or subcontractor, with
> whom the person claiming the construction lien
> contracted with, is licensed if required by law to
> be licensed.[4]

Section 302 of the act provides a self-contained
construction directive.

> This act is declared to be a remedial statute, and
> shall be liberally construed to secure the beneficial
> results, intents, and purposes of this act. *Substan-
> tial compliance with the provisions of this act
> shall be sufficient for the validity of the construc-
> tion liens provided for in this act,* and to give
> jurisdiction to the court to enforce them. [Empha-
> sis added.]

---

[1] See MCL 570.1203(3); MSA 26.316(203)(3).

[2] MCL 570.1203(3)(h); MSA 26.316(203)(3)(h).

[3] Section 204, MCL 570.1204; MSA 26.316(204), provides:

The department shall not pay out of the fund to subcontrac-
tors, suppliers, and laborers more than $75,000.00 per residen-
tial structure. When it appears that the amount claimed from
the fund, with respect to a residential structure, will exceed
$75,000.00, the department may delay payment until the total
amount to be paid can be ascertained. If the total amount
payable to subcontractors, suppliers, and laborers exceeds
$75,000.00, they shall be paid their proportional shares of that
amount.

[4] See MCL 339.601; MSA 18.425(601), MCL 339.2401; MSA
18.425(2401), and MCL 339.2403; MSA 18.425(2403).

We are asked to ascertain whether the substantial compliance language of § 302 applies to § 203(3)(h) of the act.[5]

B

The Construction Lien Act is separated into three parts.[6] Parts 1 and 3 of the act borrow substantially from the former mechanics' lien act.[7] In fact, following the repeal of the mechanics' lien act, the Legislature provided a "disposition table" that indicates the corresponding sections in the Construction Lien Act. Virtually all of the sections of the former mechanics' lien act[8] are now contained within parts 1 and 3 of the Construction Lien Act. Thus, part 3 of the Construction Lien Act, including § 302, was a substantial part of the original mechanics' lien laws, which consisted of particularized procedures and qualifications for recovery of a lien.

Part 2 of the act was an entirely new set of provisions at the time of the act's adoption in

[5] There is disagreement concerning whether the term "substantial compliance" is ambiguous in nature. See *Fischer-Flack v Churchfield, supra* at 611 (the phrase "substantial compliance" is ambiguous). Cf. *Norcross Co v Turner-Fisher Associates,* 165 Mich App 170; 418 NW2d 418 (1987) (the language of § 302 is clear and unambiguous). However, this Court is not called upon today to extrapolate the term "substantial compliance" or determine whether the plaintiff's actions conform to that term's definition.

[6] Part 1 of the act, MCL 570.1101-570.1128; MSA 26.316(101)-26.316(128), establishes detailed procedures and guidelines for the filing and recovery of construction liens. Part 2 of the act, MCL 570.1201-570.1207; MSA 26.316(201)-26.316(207), creates and provides procedures for recovery under the homeowner construction lien recovery fund. Part 3 of the act, MCL 570.1301-570.1305; MSA 26.316(301)-26.316(305), sets forth the act's application and construction.

[7] MCL 570.1-570.30; MSA 26.281-26.310, repealed by 1980 PA 497, § 303.

[8] The inconsequential exceptions that did not become a part of the Construction Lien Act are MCL 570.2; MSA 26.282 (liens upon land held jointly by husband and wife); MCL 570.4a; MSA 26.284(1) (false statements made by contractor with intent to defraud); MCL 570.28; MSA 26.308 (notice of proceedings by publication).

1982. Part 2 established the defendant homeowner lien recovery fund and promulgated rules and procedures for its administration. The fund, financed by periodic assessments on various residential licensees, was created within the Department of Licensing and Regulation.[9] The fund created defenses against an action to foreclose a residential construction lien. Thus, while a construction lien may be entirely valid, homeowners may protect themselves from multiple payments by filing an affidavit indicating that they paid the contractor and coöperated with the department in the defense of the fund, and have not colluded with any other person to obtain payment from the fund.[10] More importantly for present purposes, defendant fund also provides a remedy for lien claimants who would otherwise be precluded from recovering a construction lien because of the homeowner's protection under the act.

Given the imprecise language of § 302 and the unique statutory history of the act, it becomes quite difficult to discern the Legislature's intention from the plain language of the statute. Clearly, § 203(3)(h) was designed to protect the conscientious tradesmen from fraudulent contractors. In an attempt to achieve this purpose, this Court should apply a liberal construction to § 302 and find that it is applicable to part 2 of the act. If the Legislature intended that § 302 only apply to the procedures for perfecting a construction lien under part 1, then it would have placed § 302 in part 1 of the act or provided language expressly limiting the application of § 302 to part 1. We believe that the placement of § 302 in part 3 of the act was more

[9] The Department of Licensing and Regulation is now known as the Bureau of Occupational and Professional Regulation. See Executive Order No. 1991-9.

[10] MCL 570.1203(1); MSA 26.316(203)(1).

than "a matter of utility";[11] it was a deliberate, affirmative decision on the part of the Legislature, evidencing its intention that § 302 be applicable throughout the act, including part 2.

A statutory provision should be read in its entirety and in connection with the rest of the statute, and each provision of an act is to be read with reference to every other provision so as to produce an harmonious whole. *In re Forfeiture of $5,264,* 432 Mich 242, 251; 439 NW2d 246 (1989); *Detroit v Detroit Police Officers Ass'n,* 408 Mich 410, 481; 294 NW2d 68 (1980). In other words, due consideration must be given to all sections to produce an harmonious and consistent enactment of the entire statute. *Preston v Dep't of Treasury,* 190 Mich App 491; 476 NW2d 455 (1991). Reading the Construction Lien Act in its entirety, it is clear that § 302 should be made applicable to the requirements for collection from the fund, including § 203(3)(h).[12]

The defendant urges this Court to consider a line of cases that illustrate the development of the substantial compliance doctrine.[13] Contrary to the defendant's assertions, substantial compliance is not a judicially created doctrine. In the mechanics' lien act of 1897,[14] the original version of the current § 302 appears in § 27.

---

[11] *Ante* at 184.

[12] Admittedly, there is an inherent difficulty in requiring a subcontractor to substantially comply with a statutory provision that requires the licensure of another party. However, this Court is not called upon today to determine the standard for substantial compliance with § 203(3)(h). There may, in fact, be adequate safeguards in place within the statute to remedy any difficulty in application.

[13] *Michigan Roofing & Sheet Metal, Inc v Dufty Rd Properties,* 90 Mich App 732; 282 NW2d 809 (1979), vacated and remanded 409 Mich 887; 295 NW2d 230 (1980), (*On Remand*) 100 Mich App 577; 298 NW2d 923 (1980), lv den 412 Mich 872 (1981); *Bernard F Hoste v Kortz,* 117 Mich App 448; 324 NW2d 46 (1982); *Superior American Homes v Fry,* 130 Mich App 379; 343 NW2d 561 (1983).

[14] 1897 PA 143.

> This act is hereby declared to be a remedial statute and to be construed liberally to secure the beneficial results, intents and purposes thereof; and a substantial compliance with its several provisions shall be sufficient for the validity of the lien or liens hereinbefore provided for, and to give jurisdiction to the courts to enforce the same. [1897 PA 143.]

Thus, the doctrine has existed in this state for nearly a century and has played an essential role in the development of property lien laws.

We decline to follow the cases proffered by the defendant which involve the then-existent residential builders act,[15] not the Construction Lien Act or its predecessor. The theory behind a licensure requirement is deterrence. In those cases, recovery was being sought by an unlicensed contractor. By denying a claim to an unlicensed contractor, the Legislature sought to discourage unlicensed entities from engaging in residential construction. Deterrence would not be achieved by denying plaintiff Brown Plumbing recovery from the fund pursuant to the Construction Lien Act. Brown Plumbing was fully licensed and contributed to the fund, but was denied recovery because of Primus Energy Homes' lack of licensure. Should the Legislature determine that strict and not substantial compliance with § 203(3)(h) shall be required in the future, that change can be easily made.

Accordingly, we would affirm the decision of the Court of Appeals that the trial court properly granted plaintiff's motion for summary disposition pursuant to MCR 2.116(C)(9) and (10). On the basis of the rules of statutory construction, and the remedial nature of the Construction Lien Act, we believe it is sufficient for a lien claimant to sub-

---

[15] MCL 338.1501 et seq.; MSA 18.86(101) et seq.

stantially comply with § 203(3)(h) in order to recover from the Homeowner Construction Lien Recovery Fund.

CAVANAGH, C.J., concurred with MALLETT, J.