VUGTERVEEN SYSTEMS, INC v OLDE MILLPOND CORPORATION

Docket No. 102988. Argued December 11, 1996 (Calendar No. 8). Decided
March 18, 1997.

Vugterveen Systems, Inc., a subcontractor, was hired by Vander Wall
Construction, a general contractor, to install drywall in the con-
struction of two buildings owned by Olde Millpond Corporation.
Each building contained two units. Vugterveen was paid for the
work performed in the first building. It was fired along with Vander
Wall before receiving payment for the work performed in the sec-
ond building, and subsequently filed both a construction lien and a
notice of furnishing. Another general contractor replaced Vander
Wall. Vugterveen then brought a foreclosure action in the Kent Cir-
cuit Court against Olde Millpond Corporation, seeking to enforce
the lien. Following a bench trial, the court, Robert A. Benson, J.,
determined that the lien was enforceable, applied *Smalley v Gear-
ing*, 121 Mich 190 (1899), to reduce pro rata the amount of the lien,
and awarded attorney fees. The Court of Appeals, HOOD, P.J., and
MARILYN KELLY and J. L. MARTLEW, JJ., affirmed in part, but reversed
the trial court's *Smalley* analysis, and awarded the full amount of
the lien (Docket No. 154137). The defendant appeals.

In a unanimous opinion by Justice BRICKLEY, the Supreme Court
*held*:

Olde Millpond failed to present a valid defense to Vugterveen's
lien. It may not use payments made on a contract with a second
general contractor as a defense to a lien asserted by Vugterveen,
who had performed work under Vander Wall, the first general con-
tractor. Vugterveen's lien is valid only to the extent that Olde Mill-
pond's payments on the original general contract, combined with
Vugterveen's lien, do not exceed the price specified in Olde Mill-
pond's contract with Vander Wall.

1. MCL 570.1107(6); MSA 26.316(107)(6) was designed to protect
an owner from excessive liens by allowing reliance on the price set
forth in a construction contract. It is ambiguous, however, because
the phrase "person with whom the owner contracted" does not
explicitly address situations where, as in this case, there is more
than one general contractor, or where a general contractor and its
subcontractors are fired and replaced. The purposes of the Con-

struction Lien Act are served only if the phrase "payments made" refers to payments made on the specific contract between the owner and the person with whom the owner contracted. Thus, Olde Millpond may not use payments made on the second general contract as a defense to Vugterveen's lien because these payments were not made on the relevant contract. Vugterveen has a valid lien to the extent that the lien and the payments made by Olde Millpond on the Vander Wall contract do not exceed the price of the contract between Olde Millpond and Vander Wall. Remand to the trial court is required for a determination of the amount of payments made on the Vander Wall contract as attested by sworn statements or waivers of lien.

2. Vugterveen substantially complied with subsection 109(1) of the act. Its failure to provide a notice of furnishing does not allow Olde Millpond to assert a defense under subsection 109(6). Nor can Olde Millpond rely on a sworn statement to avoid Vugterveen's lien.

3. A court may award attorney fees to a prevailing lien claimant, but only may award attorney fees to a prevailing defendant if the suit was vexatious. Because the prevailing party is to be determined on remand, the award of attorney fees must be vacated pending further proceedings.

Affirmed in part, vacated in part, and remanded.

Justice KELLY took no part in the decision of this case.

210 Mich App 34; 533 NW2d 320 (1995) affirmed in part, and vacated in part.

*Rhoades, McKee, Boer, Goodrich & Titta* (by *Mary L. Williams, Molly M. McNamara,* and *Kenneth Horjus*) for the plaintiff.

*Randall L. Velzen* for the defendant.

BRICKLEY, J. In December of 1989, the plaintiff, Vugterveen Systems, Inc., filed a foreclosure action to enforce a construction lien against property owned by the defendant, Olde Millpond Corporation. Olde Millpond challenged the foreclosure, asserting that it had a defense to the lien. The trial court found the lien enforceable, but reduced its value. It also awarded attorney fees to Vugterveen. The Court of Appeals affirmed, awarding the lien in the entire amount

claimed by Vugterveen. 210 Mich App 34; 533 NW2d 320 (1995). Olde Millpond appeals in this Court.

### I. THE CONSTRUCTION LIEN ACT

This case involves the Construction Lien Act, MCL 570.1101 *et seq.*; MSA 26.316(101) *et seq.*, which took effect on January 1, 1982, and replaced the mechanics' lien laws enacted in 1891. See House Legislative Analysis, HB 4053, January 26, 1981. The act was intended to protect the interests of contractors, workers, and suppliers through construction liens, while protecting owners from excessive costs. See *M D Marinich, Inc v Michigan Nat'l Bank*, 193 Mich App 447, 453; 484 NW2d 738 (1992), *Fischer-Flack, Inc v Churchfield*, 180 Mich App 606, 611; 447 NW2d 813 (1989), and 1 Cameron, Michigan Real Property Law (2d ed), § 19.16, p 800. The act is to be liberally construed to effectuate these purposes. MCL 570.1302(1); MSA 26.316(302)(1). Further, substantial compliance is sufficient to meet the provisions of part one of the act. *Brown Plumbing & Heating, Inc v Homeowner Construction Lien Recovery Fund*, 442 Mich 179, 183; 500 NW2d 773 (1993). However, the act's clear and unambiguous requirements should not be ignored. *Id.* at 185.

The act is based on an exchange of information between the owner of the property, the general contractor, subcontractors, material suppliers, and laborers. See Cameron, *supra*, § 19.18, pp 802-803. The act creates this flow of information through a series of documents that provide the information necessary to allow the parties to protect their interests. McAlpine & Keating, Construction Liens in Michigan, § 4.1, p 4-3.

Normally, this flow of information begins with the property owner. The act requires an owner to file a notice of commencement with the register of deeds before any improvement is made on the property. MCL 570.1108; MSA 26.316(108). See McAlpine & Keating, *supra*, § 4.5, pp 4-7 to 4-8. The notice of commencement must be posted at the construction site, and contain certain information necessary for the preparation and filing of any future construction liens. It also notifies the public that the property has been improved, and that liens may exist. *Id.*

After the notice of commencement is filed, any entity listed in the act who performs improvements on the property is required to provide notice that it has begun work through a notice of furnishing. MCL 570.1109; MSA 26.316(109). McAlpine & Keating, *supra*, §§ 4.13-4.16, pp 4-13 to 4-16. In most cases, a subcontractor is required to provide a notice of furnishing to the owner and the general contractor within twenty days after first furnishing labor or material. MCL 570.1109(1); MSA 26.316(109)(1). This notifies owners of the identity of subcontractors improving the property who may become future lien claimants. See McAlpine & Keating, *supra*, § 4.13, p 4-13.

A subcontractor's failure to provide a notice of furnishing within the twenty-day time frame does not serve to defeat its right to a lien. MCL 570.1109(5); MSA 26.316(109)(5). However, failure to comply with the twenty-day time limit may reduce the value of the lien. Subsection 109(6) of the act provides:

> The failure of a lien claimant, to provide a notice of furnishing within the time specified in this section shall not defeat the lien claimant's right to a construction lien for

> work performed or materials furnished by the lien claimant
> before the service of the notice of furnishing except to the
> extent that payments were made by or on behalf of the
> owner or lessee to the contractor pursuant to either a con-
> tractor's sworn statement or a waiver of lien in accordance
> with this act for work performed or material delivered by
> the lien claimant. This subsection does not apply to a
> laborer. [MCL 570.1109(6);  MSA 26.316(109)(6).]

Thus, a subcontractor's delay in providing the notice of furnishing will reduce the lien by the amount that the owner had already paid for the subcontractor's work before the notice was provided. McAlpine & Keating, *supra*, § 4.15, p 4-15.   However, these payments must have been made pursuant to a contractor's sworn statement or waiver of lien. *Id.*

The act also provides owners with information by requiring general contractors and subcontractors to make sworn statements itemizing their bills. MCL 570.1110;  MSA 26.316(110).  See McAlpine & Keating, *supra*, § 4.17, p 4-17.  A general contractor must provide the owner with such a statement when payment is due or demanded, and whenever such a statement is demanded by the owner. MCL 570.1110(1);  MSA 26.316(110)(1).  The subcontractor must provide a statement to the owner only when demanded, but must provide the general contractor with a sworn statement when payment is demanded. MCL 570.1110(2), (3);  MSA 26.316(110)(2), (3). Thus, the owner can rely on a sworn statement as a comprehensive list of potential lien claimants.

Sworn statements can also be used as a defense to a claim of lien. An owner or general contractor may rely on a sworn statement prepared by another party to avoid the claim of a subcontractor, unless the sub-

contractor has provided a notice of furnishing. MCL 570.1110(7); MSA 26.316(110)(7). A contractor or subcontractor who fails to file a sworn statement does not lose lien rights, but may not bring an action to enforce a lien until the statement is filed. MCL 570.1110(8), (9); MSA 26.316(110)(8), (9). However, these defenses must be evaluated in light of the remedial and equitable purpose of the act.

Potential lien claimants are required to provide a waiver of lien to the owner on payment. The act recognizes four types of waivers. MCL 570.1115; MSA 26.316(115). Each type releases, to varying degrees, a potential claim of lien. See, generally, McAlpine & Keating, *supra*, §§ 4.23-4.40, pp 4-21 to 4-32. This allows an owner to compare the waivers of lien against the sworn statements, and to determine if there are any potential lien claimants who have not been satisfied. See McAlpine & Keating, *supra*, § 4.20, p 4-18.

The Legislature recognized that this system could be abused. Because it clouds title, a lien can be used by unscrupulous contractors to force property owners to pay excessive construction charges. Thus, the act protects owners by providing a defense to liens that would force owners to pay more than the price stated in the general contract. The act provides:

> If the real property of an owner or lessee is subject to construction liens, the sum of the construction liens shall not exceed the amount which the owner or lessee agreed to pay the person with whom he or she contracted for the improvement as modified by any and all additions, deletions, and any other amendments, less payments made by or on behalf of the owner or lessee, pursuant to either a contractor's sworn statement or a waiver of lien, in

accordance with this act. [MCL 570.1107(6); MSA 26.316(107)(6).]

This is the defense asserted by the defendant in this case.

## II. FACTS

On April 20, 1988, Olde Millpond contracted with Vander Wall Construction, a general contractor, for work on two condominium buildings, each of which contained two units. A notice of commencement was filed on November 7, 1986. In July 1988, Vander Wall hired Vugterveen as a subcontractor to perform drywall work on one building, identified as building C-2. Olde Millpond paid Vugterveen in full for this work. Indeed, Mr. Charles Hornbach, the owner of Olde Millpond, personally delivered payment to Mr. Glen Vugterveen, the owner of Vugterveen. The work done on this building is not directly part of the dispute.

On August 15, 1988, Vugterveen contracted with Vander Wall to perform drywall work on a second building, identified as B-1. The terms of this contract were set forth in a written agreement that set the price at $4,875 per unit. Because there were two units, the total cost was $9,750. Further, the trial court found that Mr. Hornbach and Mr. Vugterveen met after Vugterveen had completed work on the first building, but before it began work on the second. It was at this meeting that Mr. Hornbach paid Mr. Vugterveen for the first building. The court also found that Vugterveen began work on the second building as a result of this meeting. These findings were not disputed on appeal.

Mr. Vugterveen testified that he was to be paid in installments for the second building. The contract called for sixty percent payment when the drywall was hung, and the remainder when completed. This schedule was to be carried out on a per-unit basis. Mr. Vugterveen also testified that his company had completed the work in one unit, and had hung the drywall in the other.

In late October, 1988, Olde Millpond fired both Vugterveen and Vander Wall. On December 7, 1988, Vugterveen filed both its lien and notice of furnishing with proof of service. The lien requested payment of $7,800, the complete price of the first unit, and sixty percent of the price for the second.

Numerous sworn statements concerning building B-1 were provided by Vander Wall to Olde Millpond. Of these, two appear to be most relevant. One is a sworn statement, dated October 20, 1988, showing that the plaintiff was owed $5,000, and that $1,800 worth of work was not yet completed. The second statement, dated December 2, 1988, shows a balance of $7,775 owed to Vugterveen. The president of Vander Wall testified that this was $25 too low because of his error.

After firing Vander Wall and Vugterveen, Olde Millpond completed construction in early 1991. Olde Millpond eventually paid $276,969 to complete the project. However, the original contract price with Vander Wall had been $266,595. Thus, Olde Millpond paid $10,374 more to complete the job than it had agreed to pay in its contract with Vander Wall.[1]

---

[1] We note, however, that Olde Millpond does not claim that it paid Vander Wall or any other party for the cost of the particular work that Vugterveen performed on the second building.

In December of 1989, Vugterveen filed a foreclosure action to enforce its lien. After a nonjury trial, the court determined that the lien was enforceable. However, the court applied a pro-rata formula drawn from *Smalley v Gearing*, 121 Mich 190; 79 NW 114 (1899), and determined that the amount of the lien should be reduced to $6,896.16, plus interest of $1,433.22. The court also awarded $261 in costs, and $16,133.07 in attorney fees.

The Court of Appeals affirmed in part, but reversed the trial court's *Smalley* analysis, and awarded the full amount of the lien. *Id.* at 45-46. Olde Millpond appeals in this Court.

### III. ANALYSIS

This Court must decide whether Vugterveen's lien is enforceable. Olde Millpond asserts two theories of defense. First, it asserts that it cannot be held liable for any liens because it ultimately paid more than the original contract price to complete the project. MCL 570.1107(6); MSA 26.316(107)(6). It also argues that Vugterveen's failure to timely serve a notice of furnishing defeats the lien. MCL 570.1109(5), (6); MSA 26.316(109)(5), (6).

#### A. THE DIFFERENCE BETWEEN THE ORIGINAL CONTRACT PRICE AND THE FINAL COST OF COMPLETION

Olde Millpond argues that Vugterveen's lien is invalid under MCL 570.1107(6); MSA 26.316(107)(6), which provides:

> If the real property of an owner or lessee is subject to construction liens, the sum of the construction liens shall not exceed the amount which the owner or lessee agreed to pay the person with whom he or she contracted for the improvement as modified by any and all additions,

deletions, and any other amendments, less payments made
by or on behalf of the owner or lessee, pursuant to either a
contractor's sworn statement or a waiver of lien, in
accordance with this act. [MCL 570.1107(6);     MSA
26.316(107)(6).]

This subsection was designed to protect an owner
from excessive liens by allowing an owner to rely on
the price set forth in its contract with the general
contractor. See McAlpine & Keating, *supra*, § 2.10,
p 2-11.

Olde Millpond argues that this subsection is
unambiguous and directly applies in this case. It
asserts it cannot be required to pay any outstanding
liens because it has already paid more than the origi-
nal contract price to complete the project. However,
this subsection *is* ambiguous when applied to this
case. The phrase "person with whom [the owner] con-
tracted" does not explicitly address situations where
there is more than one general contractor, or where a
general contractor and its subcontractors are fired
and replaced. Further, Olde Millpond's analysis allows
an owner to cut off liens held by subcontractors by
merely firing them and hiring successor contractors.
Under this reading, an owner would be able to assert
subsection 107(6) as a defense to all liens held by
subcontractors on the first general contract whenever
the owner pays the successor contractors amounts
which, when added to the payments already made on
the first general contract, exceed the price of the first
general contract. This is clearly contrary to the act's
stated purpose of protecting the rights of such par-
ties. Thus, this reading must be rejected.

We conclude, however, that this subsection can and
should be interpreted so as to give full effect to the

act's purpose of protecting the interests of builders as well as owners. The act is to be liberally construed in the face of ambiguity so as to effectuate its purposes. MCL 570.1302(1); MSA 26.316(302)(1), *Brown Plumbing & Heating, supra* at 183. The purposes of the act are served only if the phrase "payments made" in subsection 107(6) refers to payments made on the specific contract between the owner and the person with whom the owner contracted. Thus, Olde Millpond may use all payments made on the contract with Vander Wall as a defense to Vugterveen's lien because Vugterveen was a subcontractor on the contract between Olde Millpond and Vander Wall. Olde Millpond may not use payments made on the second general contract as a defense to Vugterveen's lien because these payments were not made on the relevant contract.

Olde Millpond will have a defense to Vugterveen's lien if it can show that the sum of payments made pursuant to sworn statements and waivers of lien under the Vander Wall contract plus Vugterveen's claim of lien exceed the price of the Vander Wall contract. MCL 570.1107(6); MSA 26.316(107)(6). While the trial court did determine the contract price and the actual cost of completion, it did not find how much Olde Millpond had paid on the Vander Wall contract.[2] Further, the record in this case does not allow

---

[2] The trial court did find that Olde Millpond paid $179,459 to Vander Wall. However, this does not conclusively establish the amount paid on the Vander Wall contract because Olde Millpond may have directly paid subcontractors or suppliers pursuant to subsection 107(6). Indeed, Olde Millpond paid Vugterveen directly for the drywall work on the first building, and it appears that this payment may not have been included in the trial court's determination of the amount paid to Vander Wall. The trial court also did not specify whether any payment was made pursuant to a sworn statement or waiver of lien.

this Court to make that determination. Thus, it is necessary to remand this case to the trial court to determine the amount of payments made on the Vander Wall contract as attested by sworn statements or waivers of lien. Vugterveen has a valid lien to the extent that the lien and the payments made by Olde Millpond on the Vander Wall contract do not exceed the price of the contract between Olde Millpond and Vander Wall.

B. VUGTERVEEN'S FAILURE TO
PROVIDE A TIMELY NOTICE OF FURNISHING

Olde Millpond also argues that Vugterveen's failure to provide its notice of furnishing within the twenty-day time frame required by § 109 defeats the lien. Under MCL 570.1109(6); MSA 26.316(109)(6), Vugterveen cannot claim a lien for payments made by Olde Millpond attested by sworn statements or waivers of lien for work performed by Vugterveen before it supplied its notice of furnishing.

As Olde Millpond argues, the trial court found that Vugterveen failed to provide a notice of furnishing in a timely fashion. However, the trial court also found that Mr. Vugterveen met with Mr. Hornbach before work began on the second building, and that the two men agreed that Vugterveen would begin work on the new building. The court determined that this meeting removed any need for Vugterveen to provide a notice of furnishing.

We agree with this ruling. The conversation between Mr. Hornbach and Mr. Vugterveen fulfilled the notice-of-furnishing requirement. The act is remedial and equitable in nature, and substantial compliance is sufficient to meet the requirements of part

one of the act. MCL 570.1302(1); MSA 26.316(302)(1), *Brown Plumbing & Heating, supra* at 183. See also McAlpine & Keating, *supra*, § 1.9, p 1-6. The purpose of the notice of furnishing is to notify the owner that a contractor is improving the property, and to alert the owner to a possibility of a lien. *Id.*, § 4.13, p 4-13. A notice of furnishing requires a contractor to identify itself, describe the work it is to perform, and describe the property to be improved. MCL 570.1109(4); MSA 26.316(109)(4). In this case, Mr. Vugterveen supplied all this information to Mr. Hornbach at their meeting. The owner knew the identity of the subcontractor, the work that was to be performed, and the property to be improved. Under these facts, we find that the trial court did not err in determining Vugterveen substantially complied with the act. Thus, Vugterveen's failure to provide a notice of furnishing does not allow Olde Millpond to assert a defense under subsection 109(6).

Olde Millpond also argues that Vugterveen's failure to supply it with a notice of furnishing within the statutory time frame reduces the amount of any lien that Vugterveen can claim. The act provides that an owner may rely on a sworn statement to avoid a lien if a notice of furnishing has not been provided. MCL 570.1110(7); MSA 26.316(110)(7). Olde Millpond claims that the failure to provide a notice of furnishing in a timely manner allows it to rely on the October 22, 1988, sworn statement showing that Vugterveen was only entitled to $5,000, and that the total price for drywall would be $6,800.[3] Thus, Olde

---

[3] Other sworn statements show that Vugterveen was not the original drywall contractor. Mr. Vander Wall's testimony revealed that the original drywall subcontractor withdrew from the project before beginning work.

Millpond seeks to limit any lien to $5,000 in reliance on the October 22, 1988 sworn statement.

We conclude that Olde Millpond cannot limit the lien in this manner. Vugterveen's substantial compliance with the act defeats Olde Millpond's argument on this point because it had, in effect, filed a notice of furnishing before the October sworn statement was issued. Therefore, Olde Millpond may not rely on a sworn statement to avoid Vugterveen's lien.[4]

Though not disputed by the parties, this Court notes that the Court of Appeals correctly reversed the trial court's determination that the liens should be prorated under *Smalley, supra. Smalley* was decided under the old mechanics' lien act, which called for proration. Proration is not called for by the present act in this situation.[5]

---

Mr. Vander Wall also testified that Vugterveen was hired at a higher rate than the original drywall subcontractor.

[4] We note that this case does not present the issue of liability for cost overruns.

[5] The act does call for proration when a contractor, subcontractor, or other protected entity is made to leave the work uncompleted through no fault of its own. MCL 570.1120; MSA 26.316(120). Although that is what happened in this case, Vugterveen's contract with Vander Wall contained a payment schedule providing for a progress payment when the drywall was hung, and full payment when the drywalling was completed. Olde Millpond does not dispute that Vugterveen had completed one unit in the second building, and had hung the drywall in the second unit in that building. Thus, the Vugterveen-Vander Wall contract establishes that Vugterveen is entitled to the entire price on the first unit, and sixty percent of the price on the second. Therefore, this Court need not apply § 120. Olde Millpond's argument that Vugterveen's work was faulty was rejected by the trial court, and not directly argued on appeal. Further, this claim should have been the subject matter of a separate contract action. See MCL 570.1302(2); MSA 26.316(302)(2).

### C. ATTORNEY FEES

The trial court also awarded over $16,000 in attorney fees. The act contains an attorney-fee provision, which provides:

> The court may allow reasonable attorneys' fees to a lien claimant who is the prevailing party. The court also may allow reasonable attorneys' fees to a prevailing defendant if the court determines the lien claimant's action to enforce a construction lien under this section was vexatious. [MCL 570.1118(2);  MSA 26.316(118)(2).]

Thus, the act distinguishes between a lien claimant and a defendant. A court has discretion to award attorney fees to a prevailing lien claimant, but may only award attorney fees to a prevailing defendant if the suit was vexatious. MCL 570.1118(2);  MSA 26.316(118)(2).

Because the prevailing party will be determined on remand, it is inappropriate to rule on the attorney-fee issue at this point. However, if Vugterveen is determined to be the prevailing party, the trial court's award of attorney fees should be reinstated. Despite the contention of Olde Millpond, the trial judge conducted a thorough determination of the reasonableness of the fees. We find no abuse of discretion.

Thus, the award of attorney fees is vacated pending remand. If Vugterveen prevails on remand, the trial court's original award of attorney fees should be reinstated, along with any other appropriate attorney fees or costs. If Olde Millpond prevails below and pursues attorney fees, the trial court should decide whether to award them to Olde Millpond.

IV. CONCLUSION

We conclude that Olde Millpond failed to present a valid defense to Vugterveen's lien because it may not use payments made on a contract with its second general contractor as a defense to a lien asserted by Vugterveen, a subcontractor that had performed work under the first general contractor. However, Vugterveen's lien is valid only to the extent that Olde Millpond's payments on the original general contract, combined with Vugterveen's lien, do not exceed the price specified in the contract with the original general contractor. We remand the case to the trial court for a determination of the amount of Olde Millpond's payments on the original contract. We also conclude that Vugterveen substantially complied with the "notice of furnishing" requirements of the Construction Lien Act. MCL 570.1101 *et seq.*; MSA 26.316(101) *et seq.* Thus, the decision of the Court of Appeals is affirmed in part and vacated in part, and the case is remanded to the circuit court for further proceedings.

MALLETT, C.J., and CAVANAGH, BOYLE, RILEY, and WEAVER, JJ., concurred with BRICKLEY, J.

KELLY, J., took no part in the decision of this case.