Smolensk, J.
([concurring in part and dissenting in part). I respectfully concur in part and dissent in part with respect to the majority’s reasoning in this case. I also dissent from the result reached. For the following reasons, I would vacate the final order entered in this case and remand.
The trial court found that Erb Lumber, Inc., had a perfected construction lien in the amount of $8,722.80. However, the trial court found that Erb Lumber’s construction hen did not attach to the Gidley residence because the Gidleys had “[p]aid the contractor for the improvement to the residential structure,” and otherwise satisfied the requirements of subsection 203(1) of the Construction Lien Act (cla), MCL 570.1203(1); MSA 26.316(203)(1). In determining that the Gidleys had “[p]aid the contractor for the improvement to the residential structure,” the court first took the modified contract price of $36,780.90 and deducted the $29,728.90 in payments the Gidleys had actually made to the contractor, leaving a $7,052 *401 balance due on the contract. The court then granted the Gidleys a setoff in that amount for consequential damages they allegedly incurred as a result of faulty work by the contractor.
The majority concludes that the trial court erred in granting the Gidleys a setoff. I agree. Any claim by the Gidleys that the contractor’s work was faulty should have been the subject of a separate contract action. Vugterveen Systems, Inc v Olde Millpond Corp, 454 Mich 119, 132, n 5; 560 NW2d 43 (1997). The fund should not be required to be the insurer of a dissatisfied homeowner’s breach of contract claim against a contractor.
However, the majority nevertheless affirms the fund’s liability. In so doing, the majority finds that “the Gidleys’ ‘prior payment’ defense under MCL 570.1203(1); MSA 26.316(203)(1) to the attachment of Erb Lumber’s hen was not limited to the extent that they paid the contractual amount of the entire project to the contractor, but rather [sic], to the extent that they paid the contractor for the improvement (i.e., the construction materials) that Erb Lumber provided.” Ante at 396. The majority affirms the trial court’s finding that the partial payments the Gidleys made to the contractor included payment for the materials supplied by Erb Lumber.[1] The majority concludes that because the Gidleys had already made partial payments that included payments intended for Erb Lumber, the Legislature intended to protect them from having to pay for those same materials a second time. The majority thus affirms the trial court’s order *402 directing the fund to pay Erb Lumber the amount of its lien. I dissent from this result, which grants the protection afforded by the cla to a homeowner who has not even paid the contract price once, much less overpaid.
In particular, I disagree with the majority’s construction of subsection 203(l)(a). A leading commentator has construed this subsection as follows:
The [cla] gives an owner or lessee of a residential structure absolute protection from having a construction lien asserted against the property if he or she has made all the payments required by the contract with the contractor. See MCLA 570.1203(1), MSA 26.316(203)(1). In such a case, the subcontractor, supplier, or laborer must look to the Residential Lien Recovery Fund for payment of the claim. If the owner fails to make all the payments, the residential structure is subject to all the methods and procedures for foreclosing on a construction lien in a nonresidential situation. MCLA 570.1203(3)(a), MSA 26.316(203)(3)(a). [1 Cameron, Michigan Real Property Law (2d ed), § 19.37, p 822 (emphasis supplied).]
I agree with this construction. In this case, despite the affidavit filed by the Gidleys, there is no dispute that they did not make all the payments required by the contract. Thus, Erb Lumber’s construction lien attaches to the Gidleys’ property, at least to the extent that they did not make all the payments required by the contract.
Where a homeowner’s real property is subject to a construction lien, the CLA affords the homeowner protection against having to pay twice for the same improvement. This protection is found in subsection 107(6) of the CLA, MCL 570.1107(6); MSA 26.316(107)(6), which provides as follows:
*403 If the real property of an owner or lessee is subject to construction liens, the sum of the construction liens shall not exceed the amount which the owner or lessee agreed to pay the person with whom he or she contracted for the improvement as modified by any and all additions, deletions, and any other amendments, less payments made by or on behalf of the owner or lessee, pursuant to either a contractor’s sworn statement or a waiver of lien, in accordance with this act.
Subsection 107(6) “was designed to protect an owner from excessive liens by allowing an owner to rely on the price set forth in its contract with the general contractor.” Vugterveen, supra at 128. The phrase “ ‘payments made’ in subsection 107(6) refers to payments made on the specific contract between the owner and the person with whom the owner contracted.” Id. at 129. Thus, under subsection 107(6), a homeowner has a defense to a construction lien if the homeowner can show that the sum of the payments made pursuant to sworn statements and waivers of lien under the homeowner’s contract plus the amount of the hen exceeds the price of the homeowner’s contract. Id.
In this case, the trial court determined that the modified contract price was $36,780.90. The trial court also determined that the amount of Erb Lumber’s construction hen was $8,722.80. The court likewise determined that the Gidleys had made payments to the contractor on the contract totaling $29,728.90. However, the court did not determine whether, or to what extent, these payments were made pursuant to sworn statements or waivers of hen. Vugterveen, supra at 129, n 2. Thus, I would remand to the trial court for this determination. Id. at 130. Erb Lumber has a vahd hen against the Gidleys’ real property to *404 the extent that the lien and the payments made by the Gidleys pursuant to sworn statements or waivers of lien on their contract with the contractor do not exceed the price of this contract. Id. To the extent that Erb Lumber has a valid lien, it may seek to foreclose the lien. Cameron, p 822. To the extent that Erb Lumber does not have a valid lien, it may look to the fund for payment of its claim. Id.
In summary, I would vacate the trial court’s order discharging the construction lien on the Gidleys’ property and directing the fund to pay Erb Lumber the amount of the lien. I would remand for further proceedings consistent with this opinion.

 However, it must likewise be noted that the trial court also found that the contractor did not use these payments to pay Erb Lumber.