OPINION
The present case is before us on the appeal of Carey Electric, Inc. from a trial court decision overruling Carey's motion for summary judgment. As a preliminary point, we note that we issued a show cause order in this case on August 26, 1998, asking Carey to explain why the appeal should not be dismissed for lack of a final, appealable order. After receiving memoranda on the issue, we filed a decision and entry on December 1, 1998, finding that a final, appealable order existed. In our decision, we observed that a denial of summary judgment is ordinarily not an appealable order. However, we also said that, in this case, the trial court had done more than simply deny a motion for summary judgment. Specifically, by invalidating Carey's mechanics' lien, the court had effectively determined Carey's foreclosure action and had prevented a judgment in Carey's favor. Our conclusion in this regard was also supported by the trial court's nunc pro tunc order of July 28, 1998, which expressly stated that the court's prior decision had terminated the foreclosure action. Accordingly, the merits of this appeal are properly before us.
Concerning the appeal, Carey's single assignment of error is as follows:
I. The trial court erred in applying a strict compliance standard to the service requirements for notices of furnishings under R.C. 1311.19 when it denied Appellant's motion for partial summary judgment and, in effect, allowed an owner to ignore actual receipt and knowledge of the notice of furnishing.
After considering the assignment of error and the undisputed facts, we agree with the trial court that Carey's lien is invalid. A short explanation of our decision follows.
 I
According to the undisputed facts, ABF Freight System, Inc. (ABF) filed and recorded a notice of commencement (NOC) with the Montgomery County Recorder on July 18, 1995. The NOC related to a general construction contract between ABF and Pauley Construction, Inc., the general contractor for ABF's proposed truck terminal facility. Carey was a subcontractor for the truck terminal project, and entered into a contract with Pauley on July 17, 1995. Under the contract, Carey was to furnish materials, equipment, and labor for electrical work on the project. Subsequently, on September 20, 1995, Carey mailed a notice of furnishing (NOF) to ABF at the address listed in the NOC. The NOF was sent by first class mail, postage pre-paid, and stated that Carey had first furnished labor, work, or materials for the project on July 14, 1995.
ABF did receive the NOF at some point, but the record does not indicate the date of receipt. In a request for admissions, ABF admitted that a copy of the NOF was contained in ABF files. However, ABF had no record indicating whether the NOF had been received from Carey or from Pauley Construction, nor did ABF know the date of receipt. In support of its summary judgment motion, Carey submitted an affidavit from a postal employee, who said the standard delivery time for first class mail in September, 1995, would have been three business days.
The contract between Pauley and Carey was in the amount of approximately $871,000, and the last date of work performed by Carey was November 18, 1996. Carey filed an affidavit with the Montgomery County Recorder on November 25, 1996, claiming that $117,975.56 was still due for materials and labor. A copy of the affidavit was then served on ABF by certified mail on December 10, 1996.
The central issue in this case is whether the first class mail service of the NOF complied with the requirements of R.C. 1311.05 and R.C. 1311.19. In this regard, Carey contends that service substantially complied with the statutes and should be deemed adequate to preserve its lien. The trial court felt otherwise, and we agree.
Concerning notices of furnishing, R.C. 1311.05(A) states that:
 a subcontractor or materialman who performs labor or work upon or furnishes material in furtherance of an improvement to real property and who wishes to preserve his lien rights shall serve a notice of furnishing, if any person has recorded a notice of commencement in accordance with section 1311.04 of the Revised Code, upon the owner's, part owner's, or lessee's designee named in the notice of commencement or amended notice and the original contractor under the original contract pursuant to which he is performing labor or work or furnishing materials, as named in the notice of commencement or amended notice and at the address listed in the notice or amended notice at any time after the recording of the notice of commencement or amended notice but within twenty-one days after performing the first labor or work or furnishing the first materials or within the extended time period provided for in division (I) or (J) of section 1311.04 of the Revised Code.
(Emphasis added). Regarding service, R.C. 1311.19(A), provides, in pertinent part, that:
 any notice, affidavit, or other document required to be served under this chapter shall be served by one of the following means:
* * *
 (2) Certified or registered mail, overnight delivery service, hand delivery, or any other method which includes a written evidence of receipt.
Admittedly, Carey did not comply with these service requirements, since sending a document by first class mail is not a method which includes written evidence of receipt. Carey claims, however, that the correct standard to be used is substantial, rather than strict compliance. To support this proposition, Carey makes several arguments. First, Carey contends that the new mechanics' lien law passed in 1992 distinguishes between "preservation" and "perfection" of lien rights. Next, Carey points to Michigan case law which interprets a similar statutory scheme and uses a "substantial compliance" standard. And finally, Carey relies on Ohio cases which have allegedly applied a substantial compliance standard.
Concerning the first point, Carey claims that under the law prior to 1992, contractors had no right of action against an owner until they notified the owner in writing of the identities of subcontractors and the amounts due. See, former R.C. 1311.04, effective for projects contracted for before January 1, 1992. Carey also contends, by way of contrast, that contractors, laborers, and material suppliers have lien rights under the new law the moment they provide labor and materials, and need only serve notice to "preserve" those rights. See, R.C. 1311.05 (A), effective for projects contracted for after January 1, 1992. We consider this a distinction without a difference, since the right to recover on the lien does not exist in either situation if the statutory procedures and requirements have not been followed.
Furthermore, lien rights arise under R.C. 1311.02, not R.C. 1311.04 or R.C. 1311.05. In this regard, R.C. 1311.02 contained essentially the same wording before and after amendment. Specifically, the current version of this statute says, ""[e]very person who performs work or labor or furnishes material in furtherance of any improvement * * * has a lien to secure the payment." Similarly, the version in effect before January 1, 1992, stated that "[e]very person who does work or labor upon, or furnishes machinery, material, or fuel * * * has a lien to secure payment." Consequently, lien rights exist in both instances as of the time the labor or materials are supplied. The only real difference is that an NOF must be served under the current version of the statute to preserve lien rights, whereas the previous version required the owner to be served with a contractor's affidavit identifying the parties who had furnished labor or supplies, as well as the amounts due, before action could be taken on the lien. Compare, R.C.1311.05 and former R.C. 1311.04, in effect until January 1, 1992. Again, we believe this is an insignificant difference.
As we mentioned earlier, Carey's second argument is that we should follow Michigan law and apply a substantial compliance standard. However, if the statutory language in Ohio is clear, we see no need to consult law from other jurisdictions. When courts construe statutes, they "first look at the specific language contained in the statute, and, if the language is unambiguous, * * * [they] then apply the clear meaning of the words used."Roxane Laboratories, Inc. v. Tracy (1996), 75 Ohio St.3d 125, 127. Moreover, "the intent of a statute must be determined from the language, and if the intent is clearly expressed, "the statute may not be enlarged or abridged." Ohio State Bd. of Pharmacy v. Frantz (1990), 51 Ohio St.3d 143,145. As the court in Franz stressed, an unambiguous statute is "not subject to judicial modification under the guise of interpretation." Id.
Applying these principles, we first note that R.C. 1311.05(A) says that the subcontractor shall serve the NOF on the designee named in the original notice of commencement. R.C. 1311.19(A) also states that "any notice required to be served under this chapter shall be served * * * by certified or registered mail, overnight delivery service, hand delivery, or any other method which includes a written evidence of receipt." Under a "consistently applied rule of statutory construction, the use of the word `shall' is mandatory." Franklin Iron and Metal Corp. v. Ohio Petroleum UndergroundStorage Tank Release Compensation Bd. (1996), 117 Ohio App.3d 509, 516
(citation omitted). Therefore, in order to preserve lien rights under R.C. Chapter 1311, the subcontractor must serve the NOF in one of the ways expressly listed in the statute or in any other way that includes a written evidence of receipt. Because first class mail is not listed in the statute nor is it a method incorporating written evidence of receipt, Carey failed to preserve its lien rights under R.C. 1311.05.
In Paris Hill Ltd. Partnership v. Erb Lumber, Inc. (Dec. 15, 1998), the Third District reached similar conclusions about the lack of ambiguity in R.C. 1311.05(A). In Paris Hill, the subcontractor sent a NOF to the owner of the real property being improved, rather than to the owner's designee. The designee, in fact, actually received the NOF, as he shared a business address with the owner. However, despite these facts, the Third District held the lien invalid for failure to comply with R.C. 1311.05(A). In this regard, the Third District rejected the same arguments that are being made in the present case, i.e., that lien "preservation" is distinct from "perfection," and that "substantial compliance" is sufficient under R.C.1311.05 and comparable Michigan law. Id. at p. 2. Using a statutory analysis similar to ours, the Third District found, as we have, that R.C.1311.05(A) is not ambiguous. The court also rejected the "need to look beyond the statute or to engage in either liberal or strict interpretations of R.C. 1311.05(A)." Id. at p. 3.
As an aside, we also note that even if we felt the need to consult law from other jurisdictions, Michigan law is not particularly analogous. For example, under the Michigan statute, a lien claimant's failure to provide a timely NOF does not defeat his right to a lien for work performed before the NOF is served, except to the extent that the owner paid the contractor for the lien claimant's work based on a contractor's statement or a waiver of lien. See, Vugterveen Systems, Inc. v. Olde Millpond Corp. (1997),454 Mich. 119, 560 N.W.2d 43, 45 (discussing M.C.L. 570.1109). By contrast, R.C. 1311.05 is more restrictive, in that prior lien rights are not revived if the NOF is served in an untimely fashion. See, R.C. 1311.05(D). Consequently, we would not find Michigan's interpretation helpful even if Ohio's law were ambiguous.
As a final point, Ohio law does not support Carey's position that a substantial compliance standard should be applied to NOFs. In this regard, Carey relies on post-1992 cases which allegedly hold that substantial compliance is enough for purposes of the statute. However, the first case relied on by Carey, i.e., Jim Morgan Elec. Co. v. Smith (C.P. 1996),85 Ohio Misc.2d 45, reconsideration denied, 85 Ohio Misc.2d 53, did not deal with the service requirements of R.C. 1311.05(A) and R.C. 1311.19(A). Instead, it dealt with the NOC that must be filed under R.C. 1311.04. Specifically, in Jim Morgan, the NOC was properly recorded, but did not contain the date upon which the contract was entered into by the owner and general contractor. Id. at p. 50. Unfortunately, the subcontractor did not thereafter record its NOF until forty-eight days after the last work was performed on the project. As a result, the subcontractor's NOF was clearly untimely and would not have preserved the lien. Id. at 50.
In response to a motion for summary judgment filed by the owner, the subcontractor argued that the owner's failure to include the contract date in the NOC relieved the subcontractor of its obligation to timely file a NOF. The court rejected this argument, based on the fact that R.C.1311.04(A) (1) specifies only that the NOC should be "substantially" in the form specified in R.C. 1311.04. Because the legislature used the word "substantial" in connection with the content of the NOC form, the court found that substantial, rather than strict compliance was required. Substantial compliance was then interpreted as requiring a review of the totality of the circumstances. Id. at 51. After conducting such a review, the court decided that the NOC substantially complied with the statutory form because it lacked only the date the contract with the original contractor was executed. More specifically, the court decided that the missing date did not cause the subcontractor any prejudice nor did it interfere with its ability to serve its NOF in a timely manner. Accordingly, the court held that the subcontractor's failure to file the NOF was not excused, and that the lien was, therefore, invalid. Id.
Unlike R.C. 1311.04(A) (1), R.C. 1311.05(A) and R.C. 1311.19(A) do not use the term "substantial" when referring to the duties that are required. Instead, these statutes say explicitly what must be done, with no qualification. Consequently, case law interpreting a statute which uses a different term is irrelevant. In this regard, however, we do note that R.C.1311.05(B) uses the term "substantial." Similar to the provision for the content of the NOC form in R.C. 1311.04(A) (1), R.C. 1311.05(B) states that "[t]he notice of furnishing shall be in substantially the following form." R.C. 1311.05(B) then goes on to describe the content of the form. Again, this relates only to the form of the notice, not to any other statutory requirements. Therefore, even if a substantial compliance standard applied, it would only extend to the contents of the NOF, not to other statutory requirements.
The second Ohio case relied on by Carey is also inapplicable. See,RN Building Materials, Inc. v. C.R. Huffer Roofing Sheetmetal, Inc. (C.P. 1997), 85 Ohio Misc.2d 20. In that case, the Franklin County Common Pleas court considered the sufficiency of the NOC form filed by owners of property to be improved. The court decided that even if a substantial compliance standard were applied, the form filed by the owners was insufficient to satisfy the "most rudimentary requirements" in R.C. 1311.04. Id. at 26. In particular, the NOC did not contain a legal description, the name, address, and capacity of the party contracting for the improvements, or the name, address, or date the owner first executed a contract with the original contractor. It also did not describe the improvements to be made to the property and did not mention any lending institution or surety. Id. Based on these facts, the court held that the owners failed to comply with R.C. 1311.04. As a result, the materialman's failure to file a NOF was excused per R.C. 1311.04(R), which releases subcontractors and materialmen from the duty to serve a NOF if the owner fails to record a NOC in accordance with R.C. 1311.04. Id. Again, this decision relates to the content of the form and does not support the use of a "substantial compliance" standard for the procedural requirements outlined in R.C.1311.05(A) and R.C. 1311.19(A).
Similarly, Erb Lumber, Inc. v. Citizens Fed. Bank, F.S.B. (March 13. 1997), Montgomery Cty. C.P. Case No. 96-1038, unreported, also cited by Carey, is not on point. In Erb Lumber, the issue before the court was whether a bank's disbursements to a general contractor were grossly negligent in view of the bank's prior receipt of certificates from a materialman indicating amounts due for materials purchased by the contractor. The materialman had faxed the certificates to the bank and each facsimile transaction resulted in a journal indicating that transmission was successful. Additionally, the bank admitted receipt of the faxes. After reviewing the facts and a magistrate's decision in favor of the materialman, the Common Pleas Court held that the faxes to the bank complied with the written evidence requirements of R.C. 1311.19(A) (2). As a particular point, the court noted that the facsimile transmission journal indicated that the bank received the certificates. Id. at p. 5. This is consistent with R.C. 1311.19(A) (2), which states that documents shall be served by "any other method which includes a written evidence of receipt." Clearly, if a written record of receipt occurs when a facsimile transmission is sent and received, it would fall within the methods authorized in the statute. By contrast, first class mail is not a method which includes written evidence of receipt. As both the magistrate and trial court noted in the present case, evidence of receipt is critical for purposes of calculating the twenty-one day period referred to in R.C. 1311.05, i.e., in order for lien rights to be preserved, the NOF must be served within twenty-one days after the subcontractor or materialman first performs work or furnishes materials. However, if a document is served by first class mail, there is no way to tell definitively when the document arrived.
Moreover, while the court in Erb Lumber went on to rely on the bank's acknowledgment of actual receipt of notices, it did so in the context of R.C. 1311.19(B) (2), which states that "[f]or purposes of this chapter, service is complete upon receipt by the party being served." However, R.C.1311.19(B) (2) and the issue of actual receipt are irrelevant unless proper service has first been made under R.C. 1311.19(A).
Specifically, R.C. 1311.19(B) deals with when service is considered complete, and includes some specific deviations from general standards. For example, when service is made by certified mail, it is complete on the date of mailing. If the certified mail is unclaimed, it is also considered complete when first attempted. By contrast, Civ. R. 4.6(D) provides a general procedure for completing service when certified mail is unclaimed. In those situations, service is not complete when certified mail is first attempted. Instead, a process for sending out ordinary mail service is outlined. If the process is followed, service is deemed complete as of the date the clerk files and completes a certificate indicating that ordinary mail was sent. The obvious purpose of a different rule for service under R.C. Chapter 1311 is to prevent one party from defeating another's lien rights by refusing to claim certified mail. This is consistent with our previous observation about the importance of the time deadlines imposed under the mechanics' lien statutes. Additionally, the times allowed for filing NOFs and lien affidavits are quite short.
As we mentioned, completion of service, i.e., actual receipt of a document, is irrelevant if service has not properly been made using one of the methods dictated by statute. In this regard, a plain reading of R.C.1311.19 indicates that service must first be made in an appropriate method as outlined by R.C. 1311.19(A). Once service by the proper method has been made, R.C. 1311.19(B) applies and furnishes a formula for calculating when service is deemed complete. As we stressed earlier, knowing when service is complete is important because of the time constraints for preserving liens. The significance of this fact is illustrated by the present case, in which ABF actually received a copy of the NOF. However, because service was not properly made, and no one knows when the NOF was received (or from whom), actual receipt is of no help in fixing any of the relevant dates.
Accordingly, based on the preceding discussion, we see nothing inErb Lumber that persuades us to deviate from the clear procedural requirements in R.C. 1311.05(A).
The final decision relied on by Carey is Terra Developers v. Stacey
(Nov. 25, 1997), Montgomery Cty. C.P. No. 97-4491, unreported. In Terra, an affidavit of mechanics' lien was hand-delivered, but a written receipt was not obtained. Subsequently, the developer claimed the lien was invalid because of inadequate service, but the Montgomery County Common Pleas Court rejected this argument. First, the court quoted from the relevant portions of R.C. 1311.19(A), and then said, "substantial compliance in serving notice of the mechanics' lien is sufficient to sustain the lien." Id. at p. 2.
Based on these facts and the statute, one could argue that the Common Pleas Court did not need to rely on substantial compliance, i.e., the court could simply have found hand delivery sufficient without written evidence of receipt. Hand delivery is one of the methods mentioned in the statute, and a written receipt is not explicitly mentioned as a prerequisite for hand delivery, or for any type of service specifically listed. Instead, R.C.1311.19(A) only requires delivery by "[c]ertified or registered mail, overnight delivery service, hand delivery, or any other method which includes a written evidence of receipt." Thus, this section could be read as approving certain types of delivery traditionally considered verifiable, and as also permitting alternate methods not specifically listed, so long as the alternate methods include a written evidence of receipt.
A more convincing argument, however, is that the broad reference to "any other method which includes a written evidence of receipt" was intended to either describe or be equivalent to the specific items listed. See,State v. Hooper (1979), 57 Ohio St.2d 87, 89-90 (indicating that where a statute uses specific terms which are linked to a "catch-all word" by the word "other," the latter category is considered to embrace only things similar in character to those specifically listed). Although this principle of ejusdem generis is typically used to arrive at the meaning of the "catch-all word," we think it works equally well in reverse. In other words, the legislature would not have described the alternate delivery methods in the way it did had it not felt that the specifically listed methods included written evidence of receipt. Therefore, we conclude that the requirement of "written evidence of receipt" applies to hand delivery, overnight delivery, and the other items expressly listed in R.C. 1311.109(A) (2).
However, even if the court in Terra was thus required to address the issue of substantial compliance due to defective hand delivery, we are not persuaded by the court's decision. Specifically, Terra's use of "substantial compliance" in connection with service of the NOF is inconsistent with controlling authority in this district. See, HoppesBuilders and Development Co. v. Huron Builders, Inc. (1996),118 Ohio App.3d 210, discretionary appeal dismissed as improvidently allowed (1998), 81 Ohio St.3d 1233. In Hoppes, we followed long-standing precedent in holding that:
 Ohio law requires a strict interpretation of mechanic's [sic] lien statutes until a lien is created, but a liberal interpretation of their procedural and remedial interpretations after the lien has been created.
Id. at 211. Hoppes was a post-1992 case, and thoroughly considered the issue of whether the mechanics' lien statutes should be strictly construed. Notably, the claim in Hoppes was that a materialman should be allowed to recover a portion of proceeds from a foreclosure sale because the materialman had substantially complied with the requirements for a lien affidavit under R.C. 1311.06(A). Id. at 212. In this regard, the affidavit from the materialman had incorrectly identified the president, owner, and statutory agent of a company as the owner of the property to be improved. However, the company, itself, was the property owner of record. Id. at 211. Instead of letting "substantial compliance" suffice, we found the lien invalid because the materialman had not strictly complied with the requirements of the statute. Id. at 215-16.
As we stressed, our decision in Hoppes was based on established principles for evaluating mechanics' liens. Further, the law in this area has remained essentially unchanged after Hoppes. Accordingly, we see no reason to use a different standard to assess the validity of mechanics' liens. For these reasons, as well as those outlined previously, we reject the proposition that Ohio law uses or should use a standard of substantial compliance in connection with service requirements.
Because Carey unquestionably did not serve its NOF as mandated by R.C.1311.05(A) and R.C. 1311.19(A), the trial court correctly concluded that Carey's lien was not preserved and is, therefore, invalid.
Based on the preceding discussion, Carey's single assignment of error is overruled, and the judgment of the trial court is affirmed.
FAIN, J., and KERNS, J., concur.
(Hon. Joseph D. Kerns, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Mark Decker
Steven V. Miller
Hugh E. Wall, III
Mark A. Anthony
Jeffrey B. Shulman
Martin A. Beyer
Hon. John Petzold