NORTHERN CONCRETE PIPE, INC v
SINACOLA COMPANIES—MIDWEST, INC

Docket No. 114004. Decided December 22, 1999. On application by the
defendants for leave to appeal, the Supreme Court, in lieu of grant-
ing leave, reversed in part the judgment of the Court of Appeals
and reinstated the judgment of the circuit court.

Northern Concrete Pipe, Inc., brought an action in the Oakland Cir-
cuit Court against Sinacola Companies—Midwest, Inc., and The
R.L. Corporation and its president, seeking to enforce a construc-
tion lien. The court, Denise Langford-Morris, J., granted summary
disposition for The R.L. Corporation on the ground that the lien
had not been timely filed. The Court of Appeals, JANSEN, P.J., and
MARKEY, J. (O'CONNELL, J., dissenting), reversed in an unpublished
opinion per curiam, finding the plaintiff's substantial compliance
with the ninety-day filing deadline sufficient in light of MCL
570.1302(1); MSA 26.316(302)(1) (Docket No. 203322). The defend-
ants seek leave to appeal.

In a unanimous opinion per curiam, the Supreme Court held:

As an exception to the construction lien act, the substantial com-
pliance provision should not be interpreted to nullify altogether the
general rule that a statute should be interpreted consistent with its
plain and unambiguous meaning. A precise deadline is not well
suited to an analysis of what constitutes substantial compliance.
Absent any additional statutory or judicial guidance, any determina-
tion of an alternate deadline is merely arbitrary.

MCL 570.1111(1); MSA 26.316(111)(1) states without qualification
that a subcontractor's right to a lien ceases to exist if it is not
recorded in the county office of the register of deeds within ninety
days after the last furnishing of labor or material. The difficulty in
determining what constitutes substantial compliance with respect
to a precise ninety-day deadline—other than a ninety-day require-
ment—supports a conclusion that the Legislature did not intend the
substantial compliance exception to apply here. The most reasona-
ble interpretation of ninety days is precisely ninety days.

Reversed.

*Dean & Fulkerson, P.C.* (by *Jeffrey L. Hudson* and *James M. Dworman*), for the defendants-appellants.

Amici Curiae:

*John F. Rohe* and *Todd Zachary*, Co-Counsel, for Real Property Law Section of the State Bar of Michigan.

*Maddin, Hauser, Wartell, Roth, Heller & Pesses, P.C.* (by *C. Robert Wartell* and *Mark H. Fink*), and *Dean & Fulkerson, P.C.* (by *Jeffrey L. Hudson*), for Michigan Land Title Association.

PER CURIAM. The plaintiff sought to enforce a construction lien, but the circuit court granted summary disposition to the defendants on the ground that the lien was untimely filed. The Court of Appeals reversed, finding substantial compliance with statutory requirements. We reverse in part the judgment of the Court of Appeals and reinstate the judgment of the circuit court.

I

This case concerns a construction lien[1] that was filed with regard to property owned by The R.L. Corporation.[2] The lien was filed by plaintiff Northern Concrete Pipe, Inc., a subcontractor who had pro-

---

[1] The lien was filed pursuant to the Construction Lien Act, MCL 570.1101 *et seq.*; MSA 26.316(101) *et seq.*

[2] Defendant Raymond LeDuc is the president of The R.L. Corporation. He was sued along with his corporation, but we will not refer to him separately.

vided labor and materials to a contractor named Sinacola Midwest, Inc.[3]

Such a lien must be filed within ninety days after the last date when materials or services are supplied. MCL 570.1111(1); MSA 26.316(111)(1).[4] In the present case, it is admitted that materials were last supplied on November 10, 1993. Northern Concrete Pipe mailed its lien to the Oakland County Register of Deeds less than ninety days later,[5] but it was twice returned. The lien was eventually accepted for filing after Northern Concrete Pipe supplied the complete legal description of the affected property, but the acceptance occurred on March 14, 1994, more than ninety days after November 10, 1993.

Sinacola failed to pay its subcontractor, Northern Concrete Pipe,[6] and later filed for bankruptcy.

---

[3] When suit was later filed, this defendant was identified as Sinacola Companies—Midwest, Inc. For present purposes, the exact name of this defendant is immaterial.

[4] Notwithstanding [MCL 570.1109; MSA 26.316(109)], the right of a contractor, subcontractor, laborer, or supplier to a construction lien created by this act shall cease to exist unless, within 90 days after the lien claimant's last furnishing of labor or material for the improvement, pursuant to the lien claimant's contract, a claim of lien is recorded in the office of the register of deeds for each county where the real property to which the improvement was made is located. A claim of lien shall be valid only as to the real property described in the claim of lien and located within the county where the claim of lien has been recorded. [MCL 570.1111(1); MSA 26.316(111)(1).]

[5] Although the parties disagree with regard to the initial date of mailing, we accept the plaintiff's position because of the procedural posture of the case.

[6] This case has been decided by summary disposition, and thus we draw the facts from the pleadings of the parties, and from their subsequent stipulations of fact.

Northern Concrete Pipe filed suit against Sinacola[7] and The R.L. Corporation, asserting several theories of liability. In count I of its complaint, Northern Concrete Pipe sought to foreclose on the construction lien.

The R.L. Corporation filed a motion for summary disposition, which the circuit court granted on the ground that the lien had not been timely filed.[8]

A divided panel of the Court of Appeals reversed the judgment of the circuit court.[9] The majority found that the plaintiff's *substantial* compliance with the ninety-day filing deadline is sufficient in light of MCL 570.1302(1); MSA 26.316(302)(1),[10] which provides:

> This act is declared to be a remedial statute, and shall be liberally construed to secure the beneficial results, intents, and purposes of this act. Substantial compliance with the provisions of this act shall be sufficient for the validity of the construction liens provided for in this act, and to give jurisdiction to the court to enforce them.

---

[7] Sinacola has not participated in this litigation.

[8] The circuit court also granted summary disposition on the plaintiff's other claims. Those questions are not before us in the current appeal. With regard to the timeliness of the lien, the circuit court granted summary disposition pursuant to MCR 2.116(C)(8). However, the timeliness problem is apparent from the facts agreed upon by the parties rather than from the face of the complaint and the accompanying attachments, and so summary disposition should instead have been granted under MCR 2.116(C)(10).

[9] In its opinion, the Court of Appeals affirmed with regard to two other portions of the circuit court's order granting summary disposition. Unpublished opinion per curiam, issued October 23, 1998, reh den January 15, 1999 (Docket No. 203322).

[10] The majority noted that this Court has stated that this provision concerns "the perfection of construction liens provided for in part one" of the statute, which is the portion that pertains to the lien in this case. *Brown Plumbing & Heating, Inc v Homeowner Construction Lien Recovery Fund*, 442 Mich 179, 183; 500 NW2d 733 (1993); *Vugterveen Systems, Inc v Olde Millpond Corp*, 454 Mich 119, 121; 560 NW2d 43 (1997).

Writing in dissent, Judge O'CONNELL urged adherence to the strict-compliance rule stated in *Blackwell v Bornstein*, 100 Mich App 550, 553-555; 299 NW2d 397 (1980).[11]

The R.L. Corporation has applied to this Court for leave to appeal.[12] We have also received motions from the Real Property Law Section of the State Bar of Michigan and the Michigan Land Title Association to appear as amici curiae. Each urges that we reverse the judgment of the Court of Appeals because of the difficulties that will be faced by those who must determine valid title, if the ninety-day deadline for filing a construction lien is not strictly enforced.[13]

II

Judge O'CONNELL is correct.[14] It is a cardinal rule of statutory construction that a clear and unambiguous statute warrants no further interpretation and requires full compliance with its provisions, as written. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996). Within the Construction Lien Act, however, the Legislature provided an

---

[11] Judge O'CONNELL acknowledged that *Blackwell* was decided under the language of the repealed mechanic's lien statute, but correctly observed that the former sections relating to the ninety-day deadline were, in pertinent part, substantially the same as their current analogues. Compare MCL 570.5, 570.27; MSA 26.285, 26.307, repealed by 1980 PA 497, with MCL 570.1111(1), 570.1302(1); MSA 26.316(111)(1), 26.316(302)(1), enacted in 1980 PA 497 and amended by 1982 PA 17. In *Blackwell*, the Court found a valid lien after concluding that the last date when labor was supplied *was* within ninety days of when the lien was filed.

[12] The R.L. Corporation seeks relief only with respect to the holding discussed in this opinion.

[13] We grant the motions for leave to appear as amicus curiae.

[14] We review questions of statutory construction de novo. *Donajkowski v Alpena Power Co*, 460 Mich 243, 248; 596 NW2d 574 (1999).

exception to that rule, in the form of the "substantial compliance" provision. As an exception, this provision should not be interpreted to nullify altogether the general rule that statutes should be interpreted consistent with their plain and unambiguous meaning. *Richardson v Warren Consolidated School Dist*, 197 Mich App 697, 702; 496 NW2d 380 (1992). In fact, this Court has already determined that the "substantial compliance" provision is limited in its application. See *Brown Plumbing & Heating, Inc v Homeowner Construction Lien Recovery Fund*, 442 Mich 179, 185; 500 NW2d 733 (1993) (precluding application with respect to recovery from the construction lien fund). We must therefore determine whether the "substantial compliance" provision here is applicable to the ninety-day filing requirement.[15]

The scope of a statutory "substantial compliance" provision requires an analysis, on a case-by-case basis, of the following logically relevant factors among others: the overall purpose of the statute; the

---

[15] In *Brown Plumbing*, in the course of explaining that the "substantial compliance" provision of MCL 570.1302(1); MSA 26.316(302)(1) is inapplicable to part two of the act, this Court stated that the provision does apply to part one. Subsequently, in *Vugterveen Systems*, n 10 *supra*, this Court stated that "substantial compliance is sufficient to meet the provisions of part one of the act." 454 Mich 121, citing *Brown Plumbing*, 442 Mich 183. However, the Court in *Vugterveen Systems* did not specifically examine whether the "substantial compliance" provision is applicable to every word of every provision within part one of the act. Likewise, neither *Brown Plumbing* nor *Vugterveen Systems* examined the specific issue whether to require strict compliance with the ninety-day filing requirement of MCL 570.1111(1); MSA 26.316(111)(1). So, while we acknowledge that the "substantial compliance" provision is applicable to part one of the act, we do not believe that this should be interpreted so broadly as to authorize the Court to dispense with the Legislature's explicit mandates. Even the relatively broad language in *Vugterveen Systems* was tempered by the Court's acknowledgment that "the act's clear and unambiguous requirements should not be ignored." *Vugterveen Systems* at 121, citing *Brown Plumbing* at 185.

potential for prejudice or unfairness when the apparent clarity of a statutory provision is replaced by the uncertainty of a "substantial compliance" clause; the interests of future litigants and the public; the extent to which a court can reasonably determine what constitutes "substantial compliance" within a particular context; and, of course, the specific language of the "substantial compliance" and other provisions of the statute.

With respect to the purpose of the provision in question, a ninety-day period of limitation advances policies of preventing stale claims and protecting defendants from the fear of protracted litigation. *Chase v Sabin*, 445 Mich 190, 199; 516 NW2d 60 (1994), quoting *Bigelow v Walraven*, 392 Mich 566, 576; 221 NW2d 328 (1974). This is especially important in light of the public's substantial interest in the certainty of land titles. Absent strict compliance with the ninety-day filing requirement of MCL 570.1111(1); MSA 26.316(111)(1), every construction project could create a potential cloud on the title to property, creating uncertainty in land titles. Moreover, where property owners and subsequent purchasers rely on the clear and unambiguous requirements of MCL 570.1111(1); MSA 26.316(111)(1), and find no notice of lien filed with the county office of the register of deeds, it would be inequitable to later subject those parties to the risk of foreclosure. Under these circumstances, certainty of title could only be achieved by researching the complete history of improvements with respect to a particular parcel of property and painstakingly obtaining waivers of lien from each contractor, subcontractor, materials supplier, and laborer.

A precise deadline is not well suited to an analysis of what constitutes "substantial compliance." Absent any additional statutory or judicial guidance, any determination of an alternate deadline, be it ninety-one days or one hundred days or more, is merely arbitrary. This difficulty in determining what constitutes "substantial compliance" with respect to a precise ninety-day deadline supports a conclusion that the Legislature did not intend the "substantial compliance" exception to apply here.

With respect to the statutory language in question, the most reasonable interpretation of "90 days" is precisely "90 days," particularly where, as here, the statute emphasizes that the lien "cease[s] to exist" if not recorded within the ninety-day deadline. Such provisions are not as well suited to a "substantial compliance" application as, for example, provisions requiring that certain information be filed with, or that certain showings be made before, public authorities or property owners. For example, where a notice-of-furnishing requirement exists to put an owner on notice that a contractor is improving property and that the possibility of a lien exists, MCL 570.1109; MSA 26.316(109), the court can ascertain whether, in fact, the owner received notice, even if not through a technical notice of furnishing. See, e.g., *Vugterveen Systems, Inc v Olde Millpond Corp*, 454 Mich 119, 131; 560 NW2d 43 (1997).

The case before us is a clear instance in which the Legislature could not have imposed a more precise requirement. MCL 570.1111(1); MSA 26.316(111)(1) states without qualification that a subcontractor's right to a lien ceases to exist if not recorded in the

county office of the register of deeds within ninety days after the last furnishing of labor or material.

In light of the unambiguous language of MCL 570.1111(1); MSA 26.316(111)(1), we reverse in part the judgment of the Court of Appeals and reinstate the judgment of the circuit court. MCR 7.302(F)(1).

WEAVER, C.J., and CAVANAGH, KELLY, TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred.